

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-11-00120-CV
_____

JOSEPH MORRIS MCKELLAR, M.D., D/B/A O. B. ASSOCIATES, CARTER J. MOORE, M.D., AND CARTER J. MOORE, M.D., P.A., Appellants

V.

MARIA CERVANTES, INDIVIDUALLY AND AS NEXT FRIEND OF ALEK GONZALEZ, ET AL., Appellees

On Appeal from the 276th Judicial District Court
Titus County, Texas
Trial Court No. 35,429

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Carter

OPINION

In this medical negligence case, Joseph Morris McKellar, M.D., d/b/a O. B. Associates, Carter J. Moore, M.D., and Carter J. Moore, M.D., P.A., appeal the trial court's order denying their motion to dismiss the health care claims of Maria Cervantes and Omar Gonzalez, Individually and as Next Friend of Alek Gonzalez, for failure to file an expert report compliant with Section 74.351(r)(6) of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6) (West 2011). We affirm the judgment of the trial court as to McKellar. We reverse and remand for the trial court's assessment of whether to grant a thirty-day extension to cure expert report deficiencies as to Moore.

## I.     Factual and Procedural Background

Cervantes was a patient of Dr. Moore and Dr. McKellar and saw them regularly for prenatal care of her high risk twin pregnancy. McKellar admitted Cervantes to Titus Regional Medical Center during the course of her pregnancy in August 2008 with suspicion of preeclampsia.[1] When the babies were delivered via Caesarean section the day after Cervantes' admission, the twin Alek was diagnosed with encephalopathy.[2] Cervantes[3] filed suit, asserting health care liability claims against her obstetricians, McKellar and Moore. Pursuant to Section

---

[1]Preeclampsia is "a serious condition developing in late pregnancy that is characterized by a sudden rise in blood pressure, excessive weight gain, generalized edema, proteinuria, severe headache, and visual disturbances and that may result in eclampsia if untreated." http://www.merriam-webster.com/dictionary/preeclampsia.

[2] Encephalopathy is "a disease of the brain; *especially*: one involving alterations of brain structure." http://www.merriam-webster.com/dictionary/encephalopathy.

[3]Appellants will be identified as Cervantes.

74.351 of the Texas Civil Practice and Remedies Code, Cervantes timely served the expert reports and curricula vitae of Paul Douglas Gatewood, M.D., and Robert Atlas, M.D. McKellar and Moore timely filed their objections to the expert reports, as well as a motion to dismiss and for sanctions. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b) (West 2011). The motion alleged that the expert reports failed to comply with Section 74.351(r)(6) of the Texas Civil Practice and Remedies Code because they did not include opinions regarding any negligent acts on the part of Moore and failed to provide sufficient opinions directly establishing that McKellar's alleged negligent acts proximately caused Alek's injuries. The qualifications of both physicians to render opinions on the issue of causation were challenged.

Cervantes filed her response to McKellar and Moore's motion to dismiss and, following a hearing, the trial court overruled the physicians' objections to the expert reports, as well as their motion to dismiss.

McKellar and Moore appropriately appeal this interlocutory order denying the motion to dismiss. TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(9) (West Supp. 2011) (appeal of interlocutory order from district court that "denies all or part of the relief sought by a motion" seeking to dismiss plaintiff's claim for failure to meet expert report requirements); *see Lewis v. Funderburk*, 253 S.W.3d 204, 208 (Tex. 2008).

3

## II.    Analysis

As a medical negligence case, this matter is governed by Chapter 74 of the Texas Civil Practice and Remedies Code.   Section 74.351(a) provides that the plaintiff must "serve on each party or the party's attorney one or more expert reports" not later than 120 days "after the date the original petition was filed. . . ."   TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) (West 2011). The report must provide "a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed."   TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6). If the claimant's report is timely filed but allegedly deficient, the trial court may grant a single, thirty-day extension to cure that deficiency.   TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(c) (West 2011).   Here, the trial court declined to find the expert reports deficient, and thus denied the physicians' motion to dismiss.

McKellar and Moore complain that neither report met the statutory definition of an expert report.   A trial court must grant a motion to dismiss if it appears the report does not amount to an objective good faith effort to comply with the statutory definition.   *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 51 (Tex. 2002) (per curiam); *Longino v. Crosswhite*, 183 S.W.3d 913, 916 (Tex. App.—Texarkana 2006, no pet.).   A trial court's decision regarding the adequacy of an expert report is reviewed for an abuse of discretion.   *Wright*, 79 S.W.3d at 51; *Longino*, 183 S.W.3d at

916. In order to reverse the trial court, we must find the court acted arbitrarily or unreasonably without reference to guiding rules or principles. *Wright*, 79 S.W.3d at 52. We may not, however, substitute our opinion for that of the trial court. *Id.* Nevertheless, "a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion . . . ." *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992).

A trial court must grant a motion to dismiss under Section 74.351 if it appears that the report does not represent a good faith effort to comply with subsection (r)(6) or is not sufficiently specific "to provide a basis for the trial court to conclude that the claims have merit." *Am. Transitional Care Ctrs. of Tex.*, *Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6). A good faith effort further requires that the report discuss the standard of care and breach of that standard with sufficient specificity to inform each defendant of the conduct the plaintiff has called into question and to provide a basis for the trial court to conclude the claims have merit. *Jernigan v. Langley*, 195 S.W.3d 91, 94 (Tex. 2006) (per curiam). Here, the reports must provide notice of what conduct forms the basis of Cervantes' complaints and provide a basis for the trial court to conclude that the claims have merit. *Longino*, 183 S.W.3d at 917. A report that merely states an expert's conclusions about the standard of care, breach, and causation does not meet the statutory requirements. *Id.*; *Wright*, 79 S.W.3d at 52. Rather, the expert must explain the basis of his or her statements to link the expert's conclusions to the facts. *Wright*, 79 S.W.3d at 52.

**A.      The Gatewood Report**

**(1)      Inadequate as to Moore**

The report of Paul Douglas Gatewood[4] indicates that Cervantes was diagnosed with a twin monochorionic-diamnioctic pregnancy.   According to Gatewood, Cervantes was admitted to the hospital for possible preeclampsia due to excessive edema and proteinuria at a fetal gestation age of thirty-four weeks.   No nonstress test, fetal ultrasound, or biophysical profile was performed after admission until a nonstress test was started the following day.   Gatewood indicates:

> The fetal monitoring tracings demonstrate a reactive strip for one twin and a non-reassuring strip for the other by 17:54 (call A reactive, B non-reassuring).
>
> . . . . No mention of the variable is noted by OB Nurse Cook until 18:05.   She also states average variability (6-25) throughout.   Twin B has persistent, recurring variable decelerations with absent long-term variability.

Gatewood's report further states that Cook called McKellar to inform him of the nonreassuring tracings at 18:20.   Cook called again at 18:25 to inform McKellar that the patient had been transferred to labor and delivery with oxygen and intravenous fluids.   McKellar then contacted a perinatologist for a consult, who recommended delivery by Caesarean section.   At this point:

9)      Dr. McKellar did not contact L&D to prepare for a Caesarean section.

10)      Dr. McKellar arrived at L&D at 18:50 and called for the Caesarean section.

---

[4] Gatewood is a board-certified obstetrician-gynecologist.   During his active practice since 1974, Gatewood primarily practiced obstetrics with a sub-special interest in infertility/microsurgery from 1974–2004.   Since June 2004, Gatewood has continued an active locum tenens obstetrics and gynecological practice in several communities in Ohio, as well as hospitals in Tahlequah, Oklahoma, with the Cherokee Indian tribe, and Rosebud, South Dakota, with the Sioux Indian tribe through 2010.   Gatewood has also served as an instructor and clinical assistant professor of obstetrics and gynecology at the Northeastern Ohio University College of Medicine.

11) Ms. Cervantes was not taken to the OR until 19:05 – awaited anesthesia arrival. Surgery began with anesthesia at 19:05, incision was at 19:23 with deliveries at 19:28.

. . . .

15) The depressed twin was treated in the NICU for multiple problems, including encephalopathy.

Gatewood further opines that McKellar failed to meet the applicable standard of care in his treatment of Cervantes due to his

a) Failure to order continuous fetal heart rate monitoring upon admission of Ms. Cervantes to the hospital.

b) Failure to order an ultrasound evaluation of the twins for discordance and biophysical profile.

c) Failure to notify labor and delivery of the decision to proceed with emergency Caesarean section at 18:35 after the consult with Dr. Gore.

d) Upon arrival failed to expedite rapid response for the Caesarean section. The patient wasn't taken to the OR for 15 minutes (18:50–19:05) and delay in delivery from anesthesia at 19:05 until incision at 19:23.

The report also sets forth the alleged breach of the standard of care by Cook and the nurse anesthetist. Gatewood concludes,

> In summary, the deviations in acceptable standards of care more likely than not represent the proximate cause of the injuries to the baby. In addition, but for these deviations, the baby more likely than not would have been born as healthy as the sibling twin, who was neurologically and physiologically intact.

7

Moore complains that because the Gatewood report does not mention Moore or any negligent acts allegedly committed by Moore, the report does not represent a good faith effort to comply with subsection (r)(6) of Section 74.351. We agree. In the complete absence of any alleged negligent acts or omissions by Moore, the report fails to provide notice of what conduct allegedly committed by Moore forms the basis of Cervantes' complaints against him.[5] This report thus fails to provide a basis for the trial court to conclude that the claims have merit as against Moore.[6] *See Longino*, 183 S.W.3d at 917. Accordingly, to the extent the trial court

---

[5]Moore's briefing vaguely argues in a single sentence that "in the absence of any description of the injuries to the child . . . it is impossible to determine if either Dr. Gatewood or Dr. Atlas are even qualified to render any opinions on the nature and scope of the injuries to the child . . . ." While counsel for appellants argued to the trial court that Gatewood and Atlas were not qualified to provide Chapter 74 reports because they are obstetrician/gynecologists and not pediatric neurologists, no such argument has been advanced on appeal. The Texas Rules of Appellate Procedure require an appellant to provide "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." *See* TEX. R. APP. P. 38.1(i). Bare assertions of error, without argument or authority, waive error. *Enbridge Pipeline (East Tex.) L.P. v. Avinger Timber, L.L.C*., 326 S.W.3d 390, 414 (Tex. App.—Texarkana 2010, pet. granted). Because appellants' briefing on the issue of expert qualification is inadequate, the argument, if indeed it was intended to be seriously advanced, is waived. *See Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284–85 (Tex. 1994) (discussing "long-standing rule" that point may be waived due to inadequate briefing).

[6]Cervantes contends the Gatewood report is adequate to support her claims against Moore because Atlas' report states:

> Dr. McKellar and Dr. Moore were responsible for putting together a plan for this patient. They failed to provide the appropriate minimal standard of care by not monitoring this high risk pregnancy properly.

Cervantes maintains that because the same standard of care applies to both Moore and McKellar, the fact that Moore's name is only mentioned in the Atlas report is of no import. Because Moore's name is never mentioned in the Gatewood report, we cannot conclude this report in any way applies to Moore.

found Gatewood's report adequate to comply with Section 74.351(r)(6) as against Moore, it abused its discretion.[7]

### (2) Adequate as to McKellar

With respect to McKellar, it is not asserted that Gatewood's report is deficient with regard to setting forth the applicable standard of care or the manner in which McKellar failed to meet that standard. Rather, McKellar contends Gatewood's report is deficient because it fails to set forth the causal relationship between McKellar's alleged failures and the injury, harm, or damages claimed. The report states that "the deviations in acceptable standards of care more likely than not represent the proximate cause of the injuries to the baby. In addition, but for these deviations, the baby more likely than not would have been born as healthy as the sibling twin, who was neurologically and physiologically intact." Earlier in the report, the injuries to the baby are described as "multiple problems, including encephalopathy."

The Texas Supreme Court has held that an expert cannot simply opine that the breach caused the injury. *Jelinek v. Casas*, 328 S.W.3d 526 (Tex. 2010). In that case, the expert testified that "the Hospital's negligence 'in medical probability' caused Casas additional pain and

---

[7]The trial court's order provides:

> After considering DEFENDANTS' OBJECTIONS TO PLAINTIFFS' C.P.R.C. SECTION 74.351(a) EXPERT REPORTS OF PAUL D. GATEWOOD, M.D. AND ROBERT ATLAS, M.D. AND MOTION TO DISMISS AND FOR SANCTIONS, the Court hereby **DENIES** the motion.
>
> **IT IS HEREBY ORDERED** that Defendants' Objections to Plaintiffs' C.P.R.C. Section 74.351(a) timely Expert Reports of Paul D. Gatewood, M.D. and Robert Atlas, M.D. and Motion to Dismiss and for Sanctions Pursuant to C.P.R.C. § 74.351 is **DENIED**.

9

suffering." *Id.* at 535. The expert based this opinion on the presence of an intra-abdominal infection that could have been treated with certain antibiotics. Circumstantial evidence of infection existed, but there was no direct evidence of an infection. The expert conceded the circumstantial evidence on which he relied to form the opinion the patient suffered from an infection were equally consistent with two other infections cultured from the patient's incision and blood—neither of which were treatable by the antibiotics in question. *Id.* The court held that "[w]hen the only evidence of a vital fact is circumstantial, the expert cannot merely draw possible inferences from the evidence and state that 'in medical probability' the injury was caused by the defendant's negligence." *Id.* at 536.

Here, we are not dealing with circumstantial evidence of a vital fact. Nevertheless, an expert report must include a fair summary of the causal relationship between the defendant's failure to meet the appropriate standard of care and the injury, harm, or damages claimed. TEX. CIV. PRAC. & REM. CODE ANN. § 74.352(r)(6). An expert must "explain the basis of his statements to link his conclusions to the facts." *Wright*, 79 S.W.3d at 52. Moreover, a report may be sufficient if it states a chain of events that begin with a health care provider's negligence and end in a personal injury. *See Patel v. Williams*, 237 S.W.3d 901, 905 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

In that case, the court held that an expert report sufficiently set forth causation when it presented a chain of events beginning with an allegedly negligent prescription and ending with the

10

patient's death. *Id.* at 905–06. Patel prescribed the patient a drug for help in her dementia which was not FDA-approved for patients with the patient's condition. Restlessness was a known side effect of the drug. *Id.* Allegedly due to restlessness caused by the drug, the patient removed her feeding tube, resulting in improper re-insertion of the tube, causing a cut which became infected. *Id.* The cut developed into an abscess requiring multiple surgeries. *Id.* The report concluded that death was caused by infection from the improperly re-inserted feeding tube, and was held not to be conclusory or speculative regarding causation. *Id.*; *see also Presbyterian Cmty. Hosp. of Denton v. Smith*, 314 S.W.3d 508, 519 (Tex. App.—Fort Worth 2010, no pet.) (statements contained within four corners of report sufficiently link causation opinions to facts and adequately describe chain of events leading to patient's death).

It is clear from Gatewood's report that Alek suffered from encephalopathy. Encephalopathy is a disease of the brain involving alteration of the brain structures.[8] We are told that Alek's altered brain structure was probably caused by McKellar's failure to order continuous heart rate monitoring upon Cervantes' admission to the hospital; failure to order an ultrasound for discordance and a biophysical profile; and failure to notify labor and delivery of the decision to proceed with emergency Caesarean section at 18:35 after the consult with Dr. Gore. Finally, upon his arrival at the hospital, McKellar failed to expedite rapid response for the Caesarean section.

---

[8]*See supra*, footnote 2.

A fair reading of Gatewood's report is that the failure to expeditiously discover and address the recurring variable decelerations with absent long-term variability in Alek's heart rate resulted in Alek's brain damage. Thus, the report sets forth a chain of events beginning with Cervantes' admission to the hospital when McKellar allegedly negligently failed to monitor the twins' heart rates, when he knew Cervantes was at risk for preeclampsia due to excessive edema and proteinuria, and at a time when he was aware that repeated consultations for serial ultrasounds were necessary from April through July 24. Even though such ultrasounds were routinely utilized to monitor the twins' condition due to this high -risk pregnancy prior to Cervantes' hospitalization, no such ultrasounds were ordered at a critical time when she was hospitalized. Next, McKellar failed to expedite his decision to perform an emergency Caesarean section, delaying the twins' delivery, all of which resulted in brain damage to Alek. The trial court was permitted to read the causation section in the context of the entire report. *Benavides v. Garcia*, 278 S.W.3d 794 (Tex. App.—San Antonio 2009, pet. denied).

The trial court abuses its discretion only when it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles. *Wright*, 79 S.W.3d at 52. Given this standard, we cannot conclude the trial court abused its discretion in finding that Gatewood's report represents an objective, good faith effort to comply with the definition of an expert report provided in subsection (r)(6). TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6). The report discusses the standard of care, breach, and causation with sufficient specificity to inform McKellar

12

of the conduct Cervantes has alleged and to provide a basis for the trial court to conclude that the

claims have merit. *See Scoresby v. Santillan*, 346 S.W.3d 546, 556 (Tex. 2011) (citing *Palacios*,

46 S.W.3d at 879).

### B.     The Atlas Report

### (1)     Inadequate as to Moore

The report of Dr. Robert Atlas[9] indicates that Cervantes was twenty-eight years old

carrying a thirty-four-week twin gestation when she was hospitalized for a twenty-four-hour urine

collection in connection with elevated blood pressure and proteinuria.   Atlas further indicates,

> The next day upon placing the twins on the fetal monitor revealed an abnormal fetal
> heart rate tracing of twin B.   The patient was eventually delivered via C/S.
>
> There were multiple lapses in the standard of care regarding the management of
> Ms. Cervantes.   First, when a patient is admitted with the above conditions the
> standard mandates the fetal well being be assessed upon the admission.
> Ms. Cervantes was not placed on an external fetal monitor until more than 28 hours
> after admission.   Nor was a NST/BPP ordered for her.   Because of her condition,
> the fetuses were at a higher risk of complications.   Not ordering a Non Stress
> Test/Biophysical Profile (NST/BPP) on this patient is below the standard of care.
>
> Second, regarding the timing of the response of Dr. McKellar, by my evaluation the
> patient was noted to have an abnormal fetal heart rate tracing no later than 1800.   It
> was not recognized by the nursing staff until 1820.   Dr. McKellar is noted to be in
> the hospital at 1850 by the nursing notes.   Further, once in the hospital it took 33
> minutes to begin the surgical procedure.   The standards published by The
> American Congress of Ob/GYN and American Academy of Pediatrics state the

---

[9] Atlas is the Chairman of the Department of Obstetrics and Gynecology and head of Maternal Fetal Medicine at Mercy Medical Center in Baltimore, Maryland.   Atlas is also an assistant professor of Obstetrics, Gynecology, and Reproductive Sciences at the University of Maryland School of Medicine.   Atlas is board-certified in Obstetrics and Gynecology and Maternal Fetal Medicine and has been treating patients for seventeen years with a diagnosis of twin gestation, preeclampsia on a daily basis.

13

decision to incision time should be 30 minutes. This is the community standard throughout the United States.

Dr. McKellar and Dr. Moore were responsible for putting together a plan for this patient. They failed to provide the appropriate minimal standard of care by not monitoring this high risk pregnancy properly. They failed to order a NST/BPP. Patients with preeclampsia are at a marked increased risk of placental insufficiency, placental abruption, fetal death and further complications.

. . . .

In reasonable medical probability each of the above failures were a proximate cause of the injuries suffered by this child.

. . . .

By not following these standards, Ms. Cervantes was not afforded the care needed to ensure the safety of her unborn fetuses and are the proximate cause of this child's problems. . . .

Moore maintains this report is inadequate as to him because the alleged negligent acts set forth in the report cannot be attributed to him merely by a "passing mention" of his name. The Atlas report states that the failure to place Cervantes on an external monitor upon her admission to the hospital, the failure to perform a nonstress test/biophysical profile earlier than twenty-eight hours after admission, and the failure to perform surgical intervention in a timely fashion after McKellar's arrival at the hospital were lapses in the standard of care. However, there is no reference or mention that Moore was involved with the hospital admission, the care provided in the hospital, or the delivery of the twins. The Atlas report mentions Moore in a single reference in which it is stated:

14

Dr. McKellar and Dr. Moore were responsible for putting together a plan for this patient. They failed to provide the appropriate minimal standard of care by not monitoring this high risk pregnancy properly. They failed to order a NST/BPP.

The only explanation of the plan is a failure to monitor the status of the twins with a nonstress test/biophysical profile. This involves a treatment subsequent to admission to the hospital. There is nothing in the report or the record to indicate Moore was involved in Cervantes' hospital admission or subsequent treatment. Even though the Atlas report mentions Moore, a "passing mention" to a defendant and a failure to state how that defendant breached the standard of care or how the alleged breach caused injury is insufficient to constitute a report compliant with the statute. *Jernigan*, 195 S.W.3d at 93–94.

In that case, Jernigan's name appeared only in one line of the report, stating that "[a]t 4:30 p.m. [John Langley's] case was discussed with Dr. Jernigan and at 4:50 p.m. a lactulose enema was ordered." *Id.* at 93. The Texas Supreme Court determined that this

glancing statement that John's case was "discussed" with Dr. Jernigan sheds no light whatsoever on what Dr. Jernigan allegedly did wrong, much less how his alleged error(s) proximately caused John's death. Thus, we conclude that the reports omitted statutory elements of Marie Langley's claim against Dr. Jernigan.

*Id.* at 94. Likewise, in this case, even though the report indicates Atlas' opinion that the claim against Moore had merit, the report fails to discuss the required elements of the standard of care,

15

breach, and causation with sufficient specificity to inform Moore of the conduct called into question.[10]

### (2) Adequate as to McKellar

McKellar concedes the Atlas report adequately sets forth the applicable standards of care and the manner in which the care rendered by McKellar failed to meet those standards. McKellar confines his criticism of the Atlas report to the causation component, which states:

> In reasonable medical probability, each of the above failures were a proximate cause of the injuries suffered by this child.

McKellar complains that this brief statement fails to explain the nature of Alek's injuries and does not indicate the mechanism of injury or how the alleged negligent acts led to the allegedly unspecified injuries.

Cervantes maintains the causation component of the Atlas report is sufficient, inasmuch as a single expert report need not address all liability and causation issues with respect to a health care provider. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(i) (West 2011).[11] The statute

---

[10]Cervantes argues that the Atlas report is sufficient as to Moore because McKellar and Moore were jointly responsible for Cervantes' prenatal care, and they jointly failed to provide the appropriate minimal standard of care by improperly monitoring her high-risk pregnancy. She maintains that the issue of whether or not Moore's failure to create a plan addressing the complications of a high-risk pregnancy was a breach of the standard of care that caused Alek's injuries is a question for the jury, citing *Hayes v. Carroll*, 314 S.W.3d 494, 507 (Tex. App.—Austin 2010, no pet.). We disagree. In *Hayes*, the explanation of the applicable standard of care and the need to adhere to it provided sufficient information to explain how breaching the standard caused the injury in question. *Id.* at 507. The Atlas report, unlike the report in *Hayes*, fails to discuss the required elements of the standard of care, breach, and causation with sufficient specificity to inform Moore of the conduct called into question.

[11]Section 74.351(i) provides:

> Notwithstanding any other provision of this section, a claimant may satisfy any requirement of this

16

specifically provides that "a claimant may satisfy any requirement of this section for an expert report by serving reports of separate experts regarding . . . different issues arising from the conduct of a physician." TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(i). The health care liability statute thus does not require a single expert to address all liability and causation issues as to a defendant, and the expert reports should be read together when determining whether they represent a good faith effort to satisfy the statute. *Packard v. Guerra*, 252 S.W.3d 511, 526 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). We may therefore consider the Gatewood and Atlas reports in the aggregate to determine whether the trial court abused its discretion when it determined that these reports constituted an objective good faith effort to comply with the definition of an expert report in subsection (r)(6). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(*l*) (West 2011).

When considered in the aggregate, these reports indicate Alek suffered from encephalopathy[12] due to McKeller's breach of the applicable standards of care. Again, the trial court was permitted to read the causation section in the context of the entire report. *Benavides*,

---

section for serving an expert report by serving reports of separate experts regarding different physicians or health care providers or regarding different issues arising from the conduct of a physician or health care provider, such as issues of liability and causation. Nothing in this section shall be construed to mean that a single expert must address all liability and causation issues with respect to all physicians or health care providers or with respect to both liability and causation issues for a physician or health care provider.

TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(i).

[12]Even though the Atlas report indicates the child (Alek) suffered injuries, in looking at both reports in the aggregate, it is apparent Alek's primary injury was encephalopathy.

17

278 S.W.3d at 799. In that case, the court concluded the expert report linked the breach of the standard of care by failing to diagnose preeclampsia and severe preeclampsia and by failing to timely admit the mother to the hospital to the conclusion that such breaches resulted in severe untreated preeclampsia and death from cardiorespiratory arrest, as well as the traumatic delivery and injuries sustained by the infant. The report stated that if Benavides (the treating physician) had not repeatedly breached the standard of care,

> [I]n all medical probability Mrs. Garcia would have survived and her infant would not have suffered prolonged anoxia and other injuries . . . , due to the cardiopulmonary arrest and resuscitation.

*Id.* at 801–02. When the causation section was examined in the context of the entire report, it was sufficient, and permitted the trial court to conclude that Garcia's claims against Benavides had merit. *Id.* at 802.

Likewise, when the causation section of the Atlas report is examined in the context of the entire report, and is further considered together with the Gatewood report, it is apparent that the failure to order an external fetal monitor for more than twenty-eight hours after Cervantes' admission to the hospital on suspicion of preeclampsia, together with the failure, in this known, high-risk pregnancy, to order a nonstress test/biophysical profile, together with McKellar's failure to conduct a Caesarean section delivery in a timely fashion, resulted in Alek's encephalopathy. Due to these failures, "Cervantes was not afforded the care needed to ensure the safety of her unborn fetuses and are the proximate cause of the child's problems."

18

We conclude this report, considered together with the Gatewood report, was sufficient to put McKellar on notice of the conduct about which Cervantes complains and further provides a sufficient basis for the trial court to conclude Cervantes' claim against McKellar has merit.

## III.     Thirty-Day Extension

The trial court may grant a thirty-day extension to supplement a timely-filed expert report, even if the report is found to be deficient.   The extension allows the claimant an opportunity to cure the deficiencies.   TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(c); *Leland v. Brandal*, 257 S.W.3d 204, 205 (Tex. 2008) (when elements of timely-filed report found deficient by trial or appellate court, one thirty-day extension to cure may be granted).

A document utterly devoid of substantive content does not qualify as an expert report and is not eligible for an extension for an attempted cure.   But a document qualifies as an expert report if it contains a statement of opinion by an individual with expertise indicating that the claim asserted by the plaintiff against the defendant has merit.   *Scoresby*, 346 S.W.3d at 549.   Even if such a report is deficient in some respects, the plaintiff should be given an opportunity to cure, if it is possible to do so.   This lenient standard avoids the expense and delay of multiple interlocutory appeals and assures a claimant a fair opportunity to demonstrate that his or her claim is not frivolous.   *Id.*

In this instance, Gatewood's report never mentions Moore and is devoid of any substantive content concerning standard of care, breach, causal relationship, or harm as it pertains to Moore.

19

It is, therefore, not subject to an extension. Whereas, the report of Atlas, while deficient, does indicate that the claim against Moore has merit. Therefore, under the test established by the Texas Supreme Court in *Scoresby*, we will remand to the trial court for its determination of whether to grant a thirty-day extension to allow Cervantes to attempt to cure the deficiencies in the Atlas report regarding Moore.

## IV.    Conclusion

We reverse in part and remand this case to the trial court to determine whether to grant a thirty-day extension so that Cervantes might attempt to cure the deficiencies in the Atlas report as to Moore. Because the Gatewood report contained no statements regarding the standard of care, breach or causation as to Moore, there are no deficiencies to correct as to Moore; the report made such evaluation only as to McKellar. Because the trial court acted within its discretion in refusing to grant McKellar's motion to dismiss, we affirm the judgment of the trial court as it relates to McKellar.


                                        Jack Carter
                                        Justice


Date Submitted:      March 21, 2012
Date Decided:        April 18, 2012


20