

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-20-00011-CV

IN THE MATTER OF THE MARRIAGE OF ANITA ANN STEADMAN
AND FRANKLIN WELDON BARRIER

On Appeal from the 76th District Court
Morris County, Texas
Trial Court No. 26,669

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Justice Burgess

MEMORANDUM OPINION

Anita Ann Steadman filed a petition for divorce from Franklin Weldon Barrier. During a bench trial, both parties presented testimony from several witnesses denying the existence of a common-law marriage.[1] As a result, the trial court found that Steadman had failed to prove the existence of a common-law marriage, entered a decree declaring any purported marriage between Steadman and Barrier void, and ordered Steadman to pay $7,000.00 in attorney fees.

In her pro se appeal, Steadman argues (1) that the trial court erred in allowing Barrier's daughter, who was named Barrier's curatrix in interdiction proceedings, to act on his behalf,[2] (2) that the trial court accepted "fraudulent claims" that a Louisiana court decreed that there was no common-law marriage, and (3) that the trial court overlooked evidence she attempted to present during the hearing. We find that Steadman's first point of error is unpreserved, her second point of error is meritless, and her third point of error contains issues that are either unpreserved or are inadequately briefed. As a result, we affirm the trial court's judgment.

I.      Background

In her petition for divorce, Steadman alleged that she and Barrier were married as of April 2011, had separated in July 2017, and had not lived together for two years. In his answer, Barrier denied the existence of a marriage and stated that, prior to this lawsuit, a Louisiana court had already rejected Steadman's claims of common-law marriage in his interdiction proceeding.

---

[1]A common-law marriage "may be proved by evidence that . . . the man and woman agreed to be married and after the agreement they lived together in this state as husband and wife and the[y] represented to others that they were married." TEX. FAM. CODE ANN. § 2.401(a)(2).

[2]Barrier was seventy-two and had a major neurocognitive disorder that resulted in interdiction proceedings naming his daughter as curatrix. A Louisiana interdiction proceeding is akin to a Texas guardianship proceeding, and a curatrix is similar to a guardian.

At trial, Steadman's testimony during the interdiction proceedings, the Louisiana interdiction judgment, and the Louisiana court's grant of a protective order against Steadman were introduced. Testimony during the Louisiana proceeding showed that Steadman (1) was a former girlfriend of Barrier, (2) had removed him from treatment facilities against medical advice, (3) had tried to interfere with the power of attorney granted to Barrier's child by using an invalid power of attorney, and (4) had harassed Barrier's family. Pleadings filed by Steadman in the interdiction proceeding and her testimony alleged that she and Barrier had been together since 2006 and that they were common-law married in Texas. However, Steadman had also referred to herself in Louisiana pleadings as Barrier's long-term companion. Barrier's court-appointed counsel in that case reported to the Louisiana court that Barrier said he was not married, that Steadman had never been his wife, and that he was not in a romantic relationship with her. As a result, the Louisiana court issued a protective order against Steadman and appointed Barrier's daughter, Mary Lane, as Barrier's curatrix.

At the trial of this case, Lane testified that there was no common-law marriage between Barrier and Steadman. Although Lane admitted that Barrier and Steadman had lived together for many years,[3] Lane said she never heard Barrier or Steadman refer to each other as husband or wife and that they had never filed a joint tax return. While Steadman claimed that the common-law marriage began in 2011, Lane introduced a deed from Steadman to Barrier in 2013 in which Steadman described her marital status as "Widow." Lane also introduced a purported notice of

---

[3]"[I]t is difficult to infer an agreement to be married from cohabitation in modern society." *Est. of Pandozy*, No. 05-19-00755-CV, 2021 WL 711500, at *5 (Tex. App.—Dallas Feb. 22, 2021, no pet. h.) (mem. op.) (citing *Russell v. Russell*, 865 S.W.2d 929, 933 (Tex. 1993)).

eviction Steadman had sent Barrier in 2017, which stated that the notice was sent in response to Barrier's abandonment of Steadman's home. Lane testified that Barrier wanted to break up with Steadman during a hospitalization in January 2016.

Kellye Lewis, Barrier's other daughter, testified that she did not know of a common-law marriage between Steadman and her father. According to Lewis, Barrier and Stedman had an on-again, off-again relationship and, since 2011, Barrier had moved in with her five different times. According to Lewis, Barrier had "already stated multiple times over the years [that] he was not married to [Steadman]." Lewis also said that Steadman stated that she was Barrier's "caretaker and nothing else many times." Sam Barrier, Barrier's son, testified that Barrier lived with him for two months. According to Sam, Barrier never said that he was married to Steadman. Mandy Roberts, Barrier's granddaughter, also said she had never heard Barrier refer to Steadman as his wife.

Steadman called several witnesses to establish a common-law marriage. Woodine Strawn (Steadman's cleaning lady), Deborah Harris (Steadman's daughter), and Audrey Herbert Mosilee (Steadman's granddaughter), all testified that Steadman cared, cooked, and cleaned for Barrier and that the two were together often. Harris added that they were a family, and Mosilee testified that Barrier attended Steadman's family reunions. Even so, Strawn testified that, while Steadman referred to Barrier as her common-law husband, Barrier did not refer to Steadman as his common-law wife. Hailey Hutson, Steadman's great-granddaughter, testified that Barrier was a part of their family and that she grew up thinking Barrier was married to Steadman because they lived together and because Barrier attended family reunions. Even so, Hutson

4

admitted that neither Steadman nor Barrier told her that they were married, but that she had simply made that assumption because she often saw the two together.

Steadman's other witnesses denied any knowledge of a marriage between Steadman and Barrier. Richard Pearson, Steadman's handyman, testified that he had never heard whether Steadman and Barrier were married or were just living together and had never heard Barrier refer to Steadman as his wife. John Lewis, who had known the couple for a long time, also said Barrier never referred to her as his wife and never said he was married.

Steadman testified, "[O]n April 30th, 2011 . . . we put our hands on the Bible and sw[ore] to each other that we are married," but she admitted that there were no witnesses to the event. Her brief states that they undertook the act on April 30 "with the intentions of being formally married at a later date."[4] Steadman admitted that they had never filed a joint income tax return, that she received her husband's social security benefits from a prior marriage, and that she failed to report the existence of any marriage to Barrier to the Social Security Administration. Steadman, a licensed real estate broker, admitted that she listed herself as single in both a 2015 deed and documents from the sale of a house in 2017.

Based on lack of evidence, the trial court found that Steadman did not meet her burden to prove that there was a common-law marriage between her and Barrier.[5]

---

[4]"The agreement-to-be-married element requires proof of an intent to create an immediate and permanent marital relationship and that the couple did in fact agree to be husband and wife." *Est. of Pandozy*, 2021 WL 711500, at *5.

[5]Steadman does not challenge the legal or factual sufficiency of the evidence supporting the trial court's findings.

5

**II.     Steadman's Argument that the Trial Court Erred in Allowing Barrier's Daughter to Act on His Behalf Is Unpreserved**

Because Barrier was incapacitated, Lane hired counsel for Barrier to represent him at trial. His answer was verified by Lane in her individual capacity because she had personal knowledge of the facts in Steadman's petition. In her first point of error, Steadman argues that Lane did not have authority to act on Barrier's behalf in Texas and asks whether the trial court erred in allowing Lane to do so.

"As a prerequisite to presenting a complaint for appellate review, the record must show that" it "was made to the trial court by a timely request, objection, or motion that . . . stated the grounds for the ruling . . . with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context[,] and" that either the trial court "ruled on the request, objection, or motion, either expressly or implicitly," or "refused to rule on the request, objection, or motion, and the complaining party objected to the refusal." TEX. R. APP. P. 33.1(a). The appellate record shows that Steadman's first point of error was neither raised to nor ruled on by the trial court. As a result, we overrule Steadman's first point of error because it is unpreserved.

**III.     Steadman's Argument that the Trial Court Accepted "Fraudulent Claims" that a Louisiana Court Decreed the Absence of a Common-Law Marriage Is Meritless**

In her second point of error, Steadman argues that Barrier's answer fraudulently stated that the Louisiana court found that no common-law marriage existed during the interdiction proceedings and claims that the trial court relied on this fraudulent claim. Evidence involving the Louisiana proceedings was admitted without objection at trial. This included the Louisiana

6

court's findings that Barrier said he was not married, that Steadman was his friend, not his wife, and that he "had no desire for [Steadman] to have any involvement in" the interdiction. There is no indication on the record that the trial court accepted or relied on any claim in the pleadings, as opposed to the totality of the evidence presented at trial. As a result, we find Steadman's second point of error meritless.

**IV.     Steadman's Claims that the Trial Court Overlooked Evidence Are Either Unpreserved or Inadequately Briefed**

In her last point of error, Steadman argues that the trial court overlooked "critical evidence." In support of this proposition, Steadman attached several documents to the appendix of her brief that were not offered or admitted into evidence and listed alleged facts not mentioned during trial. "The appellate record consists of the clerk's record and, if necessary to the appeal, the reporter's record." *Johnson v. Garcia*, No. 06-19-00082-CV, 2020 WL 216029, at *3 (Tex. App.—Texarkana Jan. 15, 2020, pet. denied) (mem. op.) (quoting TEX. R. APP. P. 34.1). "Documents attached to briefs as exhibits or appendices are not part of the appellate record." *Id.* (citing *Copeland v. Moreland*, No. 06-14-00075-CV, 2015 WL 545679, at *2 (Tex. App.—Texarkana Feb. 10, 2015, no pet.) (mem. op.)). "We are required to consider a case solely on the appellate record; therefore, we 'cannot consider documents attached to briefs as exhibits or appendices.'" *Id.* (quoting *Copeland*, 2015 WL 545679, at *2) (citing *Robb v. Horizon Cmtys. Improvement Ass'n, Inc.*, 417 S.W.3d 585, 589 (Tex. App.—El Paso 2013, no pet.)). As a result,

we do not consider the documents attached to Steadman's brief, arguments related to those documents, or novel facts not presented below.[6]

Steadman also attempted to demonstrate the existence of a common-law marriage by reading text messages, purportedly from Barrier's daughters, that were excluded from evidence because they were not properly authenticated and were excluded under the rule of optional completeness. Steadman attaches the excluded evidence to her appendix but does not complain that the trial court's evidentiary rulings were erroneous. Even if we could interpret the brief as raising such a complaint, it was inadequately briefed.

The Texas Rules of Appellate Procedure require that an appellant's brief "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(h). "Bare assertions of error, without argument or authority, waive error." *In re Estate of Curtis*, 465 S.W.3d 357, 379 (Tex. App.—Texarkana 2015, pet. dism'd) (quoting *McKellar v. Cervantes*, 367 S.W.3d 478, 484 n.5 (Tex. App.—Texarkana 2012, no pet.)). "Although we liberally construe pro se briefs, litigants who represent themselves are held to the same standards as litigants represented by counsel." *Kennedy v. Jones*, No. 06-19-00068-CV, 2020 WL 62022, at *3 (Tex. App.—Texarkana Jan. 7, 2020, pet. denied) (mem. op.) (quoting *Hollis v. Acclaim Physician Grp., Inc.*, No. 02-19-00062-CV, 2019 WL 3334617, at *3 (Tex. App.—Fort Worth July 25, 2019, no pet.) (per curiam) (mem. op.) (citing *Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 184–85 (Tex. 1978))). "To hold otherwise would give pro se litigants an unfair advantage over litigants with an attorney." *Id.* (quoting *Hollis*, 2019 WL

---

[6]Also, nothing shows that the trial court failed to consider any evidence that was properly before it.

8

3334617, at *3). In her brief, Steadman provides no argument as to why the trial court should have admitted the excluded evidence and fails to cite to any authority in support of that argument. Instead, Steadman merely attaches the excluded evidence, for which there was no offer of proof at trial and asks that we review that evidence and "reverse and reman[d] to the trial court for additional proceedings on the merits," presumably so it can consider the new evidence attached to Steadman's appendix.

We overrule Steadman's third point of error because it makes a novel, unpreserved argument that relies on evidence outside of the appellate record and because her brief fails to adequately challenge the trial court's evidentiary rulings.

## V.    Conclusion

We affirm the trial court's judgment.


Ralph K. Burgess
Justice


Date Submitted:     March 15, 2021
Date Decided:       May 3, 2021


9