

# NUMBER 13-22-00249-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

## IN THE MATTER OF THE MARRIAGE OF
## MARK ANTHONY DUNCAN AND JAIME LYNN DUNCAN

---

### On appeal from the 105th District Court
### of Nueces County, Texas.

---

# MEMORANDUM OPINION

### Before Chief Justice Contreras and Justices Benavides and Tijerina
### Memorandum Opinion by Justice Tijerina

Pro se appellant Mark Anthony Duncan appeals from a final divorce decree. By four issues, which we have consolidated and reorganized, Mark argues the trial court erred by: (1) failing to give "proper weight to evidence" showing that appellee Jaime Lynn Duncan committed actual or constructive fraud or waste; (2) "not reconstituting the estate," (3) failing to uphold standing orders from Nueces County, and (4) failing to distribute community property in a just and right manner. We affirm.

## I. BACKGROUND

On February 15, 2018, Mark filed an amended petition for divorce. The parties filed numerous pleadings and motions.[1] Throughout the proceedings, the trial court ordered that both parties periodically withdraw certain amounts from their retirement account at Principal Financial Group (PFG) "to protect the presumed community interest in" real estate property, for community bills, and for attorney's fees.

On December 13, 2021, the trial court held a bench trial regarding the division of assets and liabilities, and identified Mark's and Jaime's separate property and divided the community property.[2] Mark filed a motion for new trial, which was denied by operation of law. This appeal followed.

## II. WAIVED ISSUES

### A. Fraud and Waste Claim

First, Mark argues that the trial court "failed to give proper weight to evidence presented in trial that supported a fraud and waste claim on part of Jaime." Specifically, Mark complains: "Jaime deprived Mark of the true value of the community estate by fraudulently creating documents to open secret accounts and by committing waste on the

---

[1] Some of these include: motions for establishment of monthly distribution from their retirement account, responses, briefs in support, discovery motions and responses, motions for contempt, motions in limine, motions for accounting, motions to compel, counterpetitions, motions for sanctions, motions for snapback relief, petitions for enforcement of Nueces County District Court's General Orders, motions for accountings of funds and distribution, motions to quash discovery responses, motions for establishment of monthly distribution, motions for distribution of funds, emergency motions for protective order, motions for deposition subpoenas, and motions for recusal and disqualification.

We note that throughout these proceedings, both parties were represented by numerous attorneys at different stages of litigation. On multiple occasions, counsel for both parties would withdraw from representation, and each party would obtain new counsel.

[2] At trial, Mark appeared with counsel while Jaime appeared pro se.

community and holding complete disregard for her fiduciary duties," and "Mark presented overwhelming and undisputed evidence that proved Jaime removed and secreted money from community property retirement accounts, sold a community property vehicle, had another vehicle repossessed, and intentionally depreciated the value of the home."

Mark does not direct us to any portion in this voluminous record where we may examine the evidence that he claims the trial court failed to "give proper weight."[3] *See* TEX. R. APP. P. 38.1(i) (requiring the appellant's brief to contain citations to the record in support of the contentions made). A bold assertion that there was "overwhelming evidence" of fraud and waste will not suffice where appellant does not provide a single record reference. *See id.*; *Rendleman v. Clarke*, 909 S.W.2d 56, 59 (Tex. App.—Houston [14th Dist.] 1995, writ dism'd) ("The failure to cite to relevant portions of the trial court record waives appellate review."). We are not required to scour a voluminous record, such as the record here, to find error. *See Garrod Invs., Inc. v. Schlegel*, 139 S.W.3d 759, 766 (Tex. App.—Corpus Christi–Edinburg 2004, no pet.); *see also Alvarado v. State*, 912 S.W.2d 199, 210 (Tex. Crim. App. 1995) ("As an appellate court, it is not our task to pore through hundreds of pages of record in an attempt to verify an appellant's claims."). We therefore overrule Mark's first issue. *See* TEX. R. APP. P. 38.1(i); *see also Dunn v. Bank-Tec S.*, 134 S.W.3d 315, 328 (Tex. App.—Amarillo 2003, no pet.) (refusing to scour a voluminous record for evidence supporting the appellant's claims); *Lloyds v. Vega*, No. 13-16-00090-CV, 2018 WL 1773304, at *13 (Tex. App.—Corpus Christi–Edinburg Apr. 12, 2018, no pet.) (mem. op.) (same). We overrule Mark's first issue.

---

[3] The record is over 2,000 pages, and Mark does not cite to it.

**B.     Reconstituted Estate Claim**

Second, Mark argues that the "trial court failed to reconstitute the estate." Specifically, Mark states that "[a]fter being presented with overwhelming evidence that Jaime committed fraud and waste on the community, the trial court failed to reconstitute the estate to the amount the estate was before Jaime committed fraud and waste." However, because Mark directs us to no evidence supporting a fraud and waste claim, Mark's contingent argument that the trial court failed to reconstitute the estate due to fraud or waste must also fail. *See* TEX. FAM. CODE ANN. § 7.009 (requiring the trial court to divide the value of the reconstituted estate in a just and right manner only if "the trier of fact determines that a spouse has committed actual or constructive fraud on the community"); TEX. R. APP. P. 38.1(i). We overrule Mark's second issue.

### III.     STANDING ORDERS

By his third issue, Mark argues that the trial court abused its discretion "by not adhering to Nueces County Standing Orders." Mark generally asserts that "Jaime grossly violated sections three and four of the Nueces County Standing Orders," but Mark does not explain how she did so "grossly violated these sections," other than this bare assertion. *See* TEX. R. APP. P. 38.1(i); *McKellar v. Cervantes*, 367 S.W.3d 478, 484 n.5 (Tex. App.—Texarkana 2012, no pet.) ("Bare assertions of error, without argument or authority, waive error."). Instead, Mark specifically asserts that "[t]he trial court gave the impression of being oblivious to having knowledge of Standing Orders when the trial court questioned Mark's attorney on rather [sic] or not an order was in place to prevent Jaime from selling the vehicle."

4

The Nueces County District Courts' General Orders provide that the parties must preserve property and the use of funds during a divorce case. *See* Nueces County District Courts General Orders, R. 3, *available at* https://www.nuecesco.com/home/showpublisheddocument/30728/638328107376970000 (last visited Jan. 5, 2024). The orders further prohibit the parties from concealing or destroying any family records, property records, or financial records. *See id.* R. 4.

At trial, Walter Scott Turner, a certified public accountant practicing primarily in forensic accounting, testified on behalf of Jaime. Turner stated that he traced Jaime's separate assets, evaluated Mark's claims for reimbursement, determined the amount of taxes Mark currently owed, identified the community assets, and determined what liabilities were outstanding. Turner reviewed inventory, detailed withdrawal records from different bank accounts, and reviewed the mingling of separate and community property funds. He further testified regarding expenditures and pending balances.

According to Turner, there was no evidence that would show Jaime committed waste or actual or constructive fraud to support Mark's claims. Turner testified regarding numerous withdrawals from different accounts, and he provided several calculations and explanations to the trial court regarding these expenditures. Turner explained that portions of the community property funds were rolled over into another account when the account was transferred to a new brokerage, and the remaining portions of the community property funds were distributed to pay community living expenses. Turner stated that "many of these [distributions] are court-ordered, others are just drawn for living expenses."

5

Additionally, Turner clarified that Mark was incorrect in his assertion that the entire retirement account was community property: "It's not. He's ignoring the fact that Jaime paid down $175,393 on the community debt for the homestead." Turner explained that Mark's "math is incorrect" because it contained "multiple duplications of expenditures" that had been accounted for, and thus, "there's no basis for a claim for withdrawals." The trial court inquired whether Turner saw anything that would support Mark's claim to reconstitute the estate; Turner said he did not.

Pursuant to the trial court's request, Turner compared Mark's and Jaime's inventories of community property, including the values for assets and liabilities. Turner opined on which amounts were appropriate to be divided between the community, which distributions were not recoverable, which assets were Jaime's separate property, the balances owed by each party, and the community's sales and proceeds.

Jaime similarly testified that her use of the community property funds was for the payment of the community bills, living expenses, and attorney's fees, in accordance with the trial court's orders and the standing orders. Mark did not refute Jaime's testimony. Thus, we conclude that Mark's bare assertions that the trial court failed to adhere to the Nueces County's General Orders are meritless, and we overrule Mark's third issue. *See Cervantes*, 367 S.W.3d at 484 n.5.

## IV. JUST AND RIGHT DIVISION

By his last issue, Mark argues the trial court abused its discretion by failing to provide a just and right division of the community estate.

### A. Standard of Review & Applicable Law

A trial court must divide the community estate in a just and right manner. TEX. FAM. CODE ANN. § 7.001. To aid in its decision, a trial court may consider factors such as the parties' respective capacities and abilities, benefits that would have derived from continuation of the marriage for the non-faulting party, business opportunities, education, relative physical conditions, relative financial conditions and obligations, disparity of ages, size of separate estates, and the nature of the property. *See Murff v. Murff*, 615 S.W.2d 696, 699 (Tex. 1981). "[W]e consider every reasonable presumption in favor of the trial court's proper exercise of discretion in dividing the community estate." *Monroe v. Monroe*, 358 S.W.3d 711, 719 (Tex. App.—San Antonio 2011, pet. denied). The complaining party has the burden of demonstrating that the division was so unjust it was a clear abuse of discretion. *See In re Marriage of Palacios*, 358 S.W.3d 662, 663 (Tex. App.—Amarillo 2009, pet. denied). "[I]t must be shown from the record that the division was so disproportionate it constituted an abuse of discretion." *Monroe*, 358 S.W.3d at 719.

## B.    Discussion

The trial court confirmed as Jaime's separate property the Principal Investment Plus Annuity (PIPA), which was held under her sole name. The trial court found "that there has been a tracing" of a "separate payment" of $175,393 appellee made for the mortgage and awarded a "reimbursement" to Jaime in that amount.

From the community property, the trial court awarded Mark a work trailer, a Ford F-150, and a Harley Davidson motorcycle. The trial court also awarded Mark $40,727.50—one-half of the community net equity in the homestead—to be taken from Jaime's PIPA. The trial court further awarded Mark $34,554.00—one-half of the

community property portion of the annuities and investments—to be withdrawn from Jaime's PIPA.

From the community property, the trial court awarded Jaime possession of the homestead, subject to the $40,727.50 cash payment due to Mark. Jaime was ordered to pay an IRS debt in the amount of $32,498 and the balance due on a promissory note executed by her and secured by a deed of trust on the homestead. Both parties were ordered to pay fifty percent of the community's debts.

Mark complains that the trial court awarded Jaime $315,708 of the PIPA account as Jaime's separate property. He asserts that he "received 6.3% of the community estate" while appellee "received 93.7% of the community estate." We disagree. Here, the trial court confirmed that the PIPA account was Jaime's *separate* property; that is, the PIPA account funds were not part of the community estate as Mark asserts. Turner explained that the PIPA account was an "asset[] owned [by Jaime] prior to the date of the marriage." Turner informed the trial court that on December 31, 2007, "the date immediately prior to the date of marriage," the balance on the PIPA account was $315,707.[4] At the time of the divorce, the PIPA account had $397,000. According to Turner, "the difference between the balance at the date of marriage and the current balance is $81,304. That is community." He further concluded that "[d]iscounted for taxes[,] the value of that community portion is $69,108." Therefore, Turner explained that the community interest in the PIPA account was $69,108. Mark does not challenge this testimony, and Mark does

---

[4] In the final divorce decree, the trial court found that an informal marriage between the parties commenced on January 1, 2008, and Mark does not challenge this fact.

8

not explain how Turner's assessment is incorrect.

Instead, Mark re-urges his argument that "[h]ad the trial court reconstituted the estate[,] the division of community property would have been exponentially higher." As previously stated, we decline to find that the trial court failed to reconstitute the estate. Instead, the trial court awarded Mark $34,554 to be taken from Jaime's PIPA; this is one-half of $69,108, which Turner determined was the community's interest in the PIPA. Turner further explained that Jaime paid $175,393 from her separate property for the homestead, and he provided the trial court with documentation verifying the same. Accordingly, we conclude that Mark did not meet his burden of demonstrating that the division was so unjust and disproportionate it was a clear abuse of discretion. *See Monroe*, 358 S.W.3d at 719; *In re Marriage of Palacios*, 358 S.W.3d at 663. We overrule Mark's last issue.

### V.    CONCLUSION

We affirm the judgment of the trial court.

JAIME TIJERINA
Justice

Delivered and filed on the
8th day of February, 2024.

9