YVONNE T. RODRIGUEZ, Justice *732 Appellants, Linda S. Restrepo and Carlos E. Restrepo d/b/a Collectively RDI Global Services and R & D International, appeal from a judgment awarding damages in the amount of $125,775 to Appellee, Alliance Riggers & Constructors, Ltd. (Alliance Riggers).[1] We affirm.
FACTUAL SUMMARY
Alliance Riggers has been in operation since 1978, and its business includes crane service as well as pre-cast and steel erection. On March 11, 2011, Alliance Riggers' president, Phillip H. Cordova, met with Linda S. Restrepo and Carlos E. Restrepo to discuss the production of a corporate marketing video and creation of a webpage for Alliance Riggers. The Restrepos operated a company known as RDI Global Services. According to Cordova, Ms. Restrepo represented that she had a Ph.D. and they were experts in producing corporate marketing videos and creating webpages. From this conversation, Cordova understood that Appellants had created numerous webpages. Based on these representations, Alliance Riggers entered into a written contract with Appellants to produce a five-minute high definition corporate marketing video and an e-commerce internet platform and mount the corporate marketing video on the platform. Alliance Riggers agreed to pay $18,500 for the corporate marketing video[2] and $4,500 for the webpage[3] ($23,000 total). Cordova testified that the contract he signed on behalf of Alliance Riggers had been prepared by the Restrepos. In the contract, Ms. Restrepo's name is shown as "Dr. Linda S. Restrepo." After entering into the contract with Alliance Riggers, Appellants purchased the domain name, "allianceriggersandconstructors.com" in their own name. Alliance Riggers paid Appellants the money due under the contract except for the final payment of $1,000, and Appellants launched the webpage before Alliance Riggers saw or approved it. The webpage contained a statement that it was designed by RDI Global. The webpage was unacceptable to Cordova because it contained inaccurate information, it would not load properly, and it did not have Alliance Riggers' phone number under the contact information. When potential customers called the phone number shown on the webpage, they were directed to crane companies other than Alliance Riggers. Because Appellants maintained that they owned the webpage, Alliance Riggers could not correct the errors, and if the company wanted to make any changes to the webpage, Alliance Riggers *733 had to contact Appellants and pay them additional sums of money.
The corporate marketing video and approximately 99 copies were delivered to Alliance Riggers' facility in a box by a runner. The label on the video stated "2012 RDI Global Services" and the video itself reflects that it was created and produced by RDI Global Services. Upon viewing the video, Cordova found it unacceptable because it contained factual misstatements and errors, it was not professionally done, the video made it appear that the cranes were being operated in an unsafe manner, and the video used the wrong logo for the company. Cordova subsequently learned that Ms. Restrepo did not have a Ph.D. and Appellants had previously created only one webpage.
On May 11, 2012, Alliance Riggers sent Appellants a letter demanding that they cease using its trademark through the webpage. Appellants did not comply with the demand, and Alliance Riggers filed suit asserting trademark infringement, breach of contract, and violation of the DTPA. Appellants answered and filed a counterclaim against Alliance Riggers alleging a suit on sworn account and breach of contract.
A jury found that Appellants breached the contract, knowingly engaged in an unconscionable action or course of action that was a producing cause of damages to Alliance Riggers, and knowingly engaged in a false, misleading, or deceptive act or practice that Alliance Riggers relied on to its detriment that was a producing cause of damages to Alliance Riggers. The jury awarded actual damages to Alliance Riggers in the amount of $34,000 for breach of contract and the DTPA violations, additional damages of $26,000 because the conduct which formed the basis of the DTPA violations was committed knowingly, and attorney's fees in the amount of $60,250.00 for trial, and conditional awards in the event of an appeal to the court of appeals and the Texas Supreme Court.[4] The jury also found that Appellants infringed the common law service mark of Alliance Riggers. The trial court entered judgment in favor of Alliance Riggers based on the jury's verdict, awarding total damages in the amount of $125,775.00. The court also permanently enjoined Appellants from using Alliance Riggers' logo and the name "allianceriggersandconstructors.com." Appellants timely filed a motion for judgment notwithstanding the verdict, but the trial court did not grant it.
SUFFICIENCY OF THE EVIDENCE-DTPA
In Issue One, Appellants contends that the evidence does not support the jury's answers to the jury questions pertaining to the DTPA violations. We have construed this issue as challenging the legal and factual sufficiency of the evidence supporting the jury's verdict with respect to the DTPA violations.
Multifarious Issue
Issue One is multifarious because Appellants have raised numerous grounds of error in addition to the legal and factual sufficiency arguments. See In re S.K.A. , 236 S.W.3d 875, 894 (Tex.App.-Texarkana 2007, pet. denied) (observing that a multifarious issue or point of error is one that raises more than one specific ground of error). Courts may disregard any assignment of error that is multifarious. Rich v. Olah , 274 S.W.3d 878, 885 (Tex.App.-Dallas 2008, no pet.). Alternatively, courts may consider a multifarious issue if it can determine, with reasonable certainty, the error about which the appellant wants to *734 complain. Id. In considering Appellants' brief, we also keep in mind that the Rules of Appellate Procedure require a brief to contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record. TEX.R.APP.P. 38.1(i). "Bare assertions of error, without argument or authority, waive error." McKellar v. Cervantes , 367 S.W.3d 478, 484 n.5 (Tex.App.-Texarkana 2012, no pet.) ; see Fredonia State Bank v. General American Life Insurance Company , 881 S.W.2d 279, 284-85 (Tex. 1994).
Issue One challenges the sufficiency of the evidence to support the jury's findings regarding breach of contract, but Appellants' brief lists twelve sub-issues, ten of which complain about alleged trial error.[5] The sub-issues include arguments that Alliance Riggers failed to comply with the notice requirements of the DTPA, the trial court made erroneous evidentiary rulings, the trial court erred by granting Alliance Riggers' motion in limine, the jury questions and charge were "framed" by a constitutionally disqualified judge, Linda Restrepo was never served, and the trial court lacked subject matter jurisdiction. These complaints are not raised by separate points of error or issues. Consequently, sub-issues B, D, E, F, G, H, I, K, and L will be disregarded. We will, however, address Appellants' sufficiency arguments and their complaint that Alliance Riggers failed to serve Ms. Restrepo.
Failure to Serve Ms. Restrepo
In sub-issue J, Appellants argue that the judgment must be reversed because Ms. Restrepo was never served with citation. This sub-issue is without merit because Ms. Restrepo entered a general appearance by obtaining a ruling on her motion to dismiss Alliance Riggers' suit for want of prosecution before the trial court ruled on her special appearance.
Alliance Riggers filed its petition on June 20, 2012. On October 29, 2012, Appellants filed a motion to dismiss and a motion to quash service of citation. The motion to dismiss is titled "VERIFIED MOTION TO DISMISS WITH PREJUDICE AGAINST THE PLAINTIFF," and it seeks dismissal of the suit on the ground that it is frivolous. In this motion, Appellants include a single sentence in which they assert that they are making a special appearance pursuant to TEX.R.CIV.P. 120a for the purpose of filing the motion to dismiss.[6] On November 21, 2012, Appellants filed a motion to dismiss Alliance Riggers' suit for want of prosecution. The trial court conducted a hearing on the motion and denied it on December 7, 2012. The trial court denied Appellants' special appearance more than five months later on May 31, 2013. We affirmed the denial of the special appearance on February 28, 2014. See Linda S. Restrepo and Carlos E. Restrepo d/b/a Collectively RDI Global Services and R & D International v. Alliance Riggers & Constructors, Ltd. , 441 S.W.3d 453, 455 (Tex.App.-El Paso 2014, no pet.).
A party waives the absence of personal jurisdiction by making a general appearance in the case or by failing to timely object to the court's jurisdiction. Reata Const. Corp. v. City of Dallas , 197 S.W.3d 371, 379 (Tex. 2006). A party enters a general appearance when he (1) invokes the judgment of the court on any *735 question other than the court's jurisdiction, (2) recognizes by his acts that an action is properly pending, or (3) seeks affirmative action from the court. Trenz v. Peter Paul Petroleum Co. , 388 S.W.3d 796, 800 (Tex.App.-Houston [1st Dist.] 2012, no pet.).
A special appearance must be made by sworn motion filed prior to a motion to transfer venue or any other plea, pleading or motion, but other pleas, motions, and instruments can be contained in the same instrument. TEX.R.CIV.P. 120a(1) ; see Exito Electronics Co., Ltd. v. Trejo , 142 S.W.3d 302, 303 (Tex. 2004). Every appearance, prior to judgment, not in compliance with Rule 120a is a general appearance. TEX.R.CIV.P. 120a(1). A party filing a special appearance must strictly comply with Rule 120a's requirements because failure to do so results in waiver. See Trenz , 388 S.W.3d at 800. Rule 120a imposes a due-order-of-pleading requirement and a due-order-of-hearing requirement on a person or entity attempting to appear before a Texas court for the limited purpose of contesting personal jurisdiction. Trenz , 388 S.W.3d at 800. The due-order-of-hearing requirement mandates that a special appearance motion "shall be heard and determined before a motion to transfer venue or any other plea or pleading may be heard." TEX.R.CIV.P. 120a(2) ; Exito Electronics , 142 S.W.3d at 306.
By obtaining a ruling on the motion to dismiss Alliance Riggers' suit for want of prosecution before securing a ruling on her special appearance, Ms. Restrepo waived her special appearance and entered a general appearance. See Klingenschmitt v. Weinstein , 342 S.W.3d 131, 134 (Tex.App.-Dallas 2011, no pet.) (party waived special appearance by filing and obtaining hearing on motion to dismiss plaintiff's claims with prejudice prior to hearing on special appearance). Sub-issue J is overruled. We turn now to Appellants' sufficiency challenges.
Standards of Review
A party challenging the legal sufficiency of an adverse finding on an issue upon which it did not have the burden of proof must demonstrate that no evidence supports the finding. Examination Management Services, Inc. v. Kersh Risk Management, Inc. , 367 S.W.3d 835, 839 (Tex.App.-Dallas 2012, no pet.). In a legal sufficiency review, we credit evidence favorable to the finding if a reasonable fact finder could, disregard contrary evidence unless a reasonable fact finder could not, and reverse the fact finder's determination only if the evidence presented would not enable a reasonable and fair-minded person to reach the judgment under review. City of Keller v. Wilson , 168 S.W.3d 802, 827 (Tex. 2005). We will sustain a legal sufficiency challenge if the record reveals: (1) the complete absence of evidence supporting the finding; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to support the finding; (3) the evidence offered to prove the finding is no more than a mere scintilla; or (4) the evidence conclusively establishes the opposite of the finding. Id. at 810-11. More than a scintilla of evidence exists when the evidence presented rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. Ford Motor Co. v. Ridgway , 135 S.W.3d 598, 601 (Tex. 2004). A reviewing court cannot substitute its judgment for that of the trier-of-fact, so long as the evidence falls within this zone of reasonable disagreement. City of Keller , 168 S.W.3d at 822.
When reviewing the factual sufficiency of the evidence to support the jury's verdict, we consider and weigh all of the evidence and will set aside the verdict *736 only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Dow Chemical Co. v. Francis , 46 S.W.3d 237, 242 (Tex. 2001). Under this standard, we review all of the evidence in the record, including evidence contrary to the verdict. See Thomas v. Layton , 324 S.W.3d 150, 153 (Tex.App.-El Paso 2010, pet. denied). Further, we may not substitute our judgment for that of the fact finder, even if we would have reached a different conclusion when reviewing the evidence. Id.
The "Consumer" Element
Appellants contend that the evidence is legally insufficient to prove that Alliance Riggers is a consumer under the DTPA. Section 17.50 of the Business and Commerce Code provides that a consumer may maintain an action where certain types of conduct constitute a producing cause of economic damages or damages for mental anguish. TEX.BUS.&COMM.CODE ANN. § 17.50(a) (West 2011). Section 17.45(4) defines "consumer" as meaning an individual, partnership, corporation, this state, or a subdivision or agency of this state who seeks or acquires by purchase or lease, any goods or services, except that the term does not include a business consumer that has assets of $25 million or more, or that is owned or controlled by a corporation or entity with assets of $25 million or more. TEX.BUS.&COMM.CODE ANN. § 17.45(4) (West 2011). A "business consumer" is defined as an individual, partnership, or corporation who seeks or acquires by purchase or lease, any goods or services for commercial or business use, but the term does not include this state or a subdivision or agency of this state. TEX.BUS.&COMM.CODE ANN. § 17.45(10) (West 2011). A plaintiff must prove his or her status as a consumer to prevail in an action under the DTPA. See Kennedy v. Sale , 689 S.W.2d 890, 892-93 (Tex. 1985).
The record includes the contract entered into between the parties, and Phillip Cordova testified that Alliance Riggers hired Appellants to create a webpage and a marketing video. Thus, there is ample evidence that Alliance Riggers is a business consumer and it sought to purchase services from Appellants. Thus, the evidence is both legally and factually sufficient to show that Alliance Riggers met its burden of proof on this element of its DTPA claims.
Affirmative Defense-Business Consumer Exception
Appellants argue that the evidence showed Alliance Riggers does not qualify as a consumer because it has assets of $25 million or more. It was not Alliance Riggers' burden to prove that its assets were valued at less than $25 million because the $25 million exception to business consumer status is an affirmative defense. Eckman v. Centennial Savings Bank , 784 S.W.2d 672, 675-76 (Tex. 1990). Thus, Appellants had the burden to both plead and prove this affirmative defense. Id. Appellants included this affirmative defense in their answer and they elicited some evidence related to it at trial. They did not, however, request that the issue be submitted to the jury or object that it was not included in the charge. Rule 279 of the Texas Rules of Civil Procedure provides that: "Upon appeal all independent grounds of recovery or of defense not conclusively established under the evidence and no element of which is submitted or requested are waived." TEX.R.CIV.P. 279. The failure to request a jury instruction on an affirmative defense results in waiver of that ground by the party relying on it unless it was conclusively established. XCO Production Co. v. Jamison , 194 S.W.3d 622, 632 (Tex.App.-Houston [14th Dist.] 2006, pet. denied).
*737 We will examine the evidence to determine whether Appellants conclusively established their affirmative defense. Appellants point to Cordova's testimony that Alliance Riggers had purchased about thirty-six cranes "over the years" and the company had paid over $25 million for those cranes. When Ms. Restrepo's counsel suggested during cross-examination that the value of Alliance Riggers easily exceeded $25 million, Cordova refused to agree and explained that the equipment had depreciated and he did not know the fair market value of the equipment. Cordova testified that the company also owned a fleet of over-the-road tractors, have trailers, lowboys, "conex boxes," "dry vans," and forklifts, but Appellants did not elicit any testimony from him regarding the value of these assets. This evidence does not conclusively establish that Alliance Riggers' asserts were worth $25 million or more. Consequently, Appellants waived their affirmative defense by failing to request a jury instruction on it.
False, Misleading, or Deceptive Act or Practice
Appellants next contend that the evidence is legally and factually insufficient to support the jury's finding that Appellants committed a false, misleading, or deceptive act or practice. More specifically, Appellants assert that the evidence did not show that each of them committed a false, misleading, or deceptive act or practice.
The jury answered "yes" to Question 8 which asked:
Did the Restrepos engage in any false, misleading, or deceptive act or practice that Alliance Riggers and Constructors relied on to its detriment that was a producing case [sic] of damages to Alliance Riggers and Constructors?
'Producing cause' means a cause that was a substantial factor in bringing about damages, if any, and without which the damages would not have occurred. There may be more than one producing cause.
'False, misleading or deceptive act or practice' means any of the following:
(1) representing that services had or would have characteristics that they did not have;
(2) representing that services are or will be of a particular quality if they were of another;
(3) representing that an agreement confers or involves rights that it did not have or involve;
(4) failing to disclose information about services that was known at the time of the transaction with the intention to induce Alliance Riggers & Constructors into a transaction it otherwise would not have entered into if the information had been disclosed.
Appellants did not object to the definition of "false, misleading, or deceptive act or practice." Consequently, the sufficiency of the evidence is measured against the charge as submitted. See Osterberg v. Peca , 12 S.W.3d 31, 55 (Tex. 2000).
Alliance Riggers presented evidence in support of its theory that the Appellants failed to disclose information about services with the intent to induce Alliance Riggers to enter into the contract to produce the webpage and the corporate marketing video. To be actionable under the DTPA, a defendant's failure to disclose material information "requires that the defendant have known the information and have failed to bring it to the plaintiff's attention." Doe v. Boys Clubs of Greater Dallas, Inc. , 907 S.W.2d 472, 479 (Tex. 1995). The evidence showed that both Mr. *738 and Ms. Restrepo represented to Cordova at the meeting that Ms. Restrepo had a Ph.D. and they had expertise and experience in producing a corporate webpage, but Ms. Restrepo did not have a Ph.D. and Appellants had previously designed only one webpage. Cordova testified that if he had known that Ms. Restrepo did not have a Ph.D. and Appellants were not experts in creating webpages, Alliance Riggers would not have hired them. The jury could reasonably infer from the evidence that Appellants knew that these were misrepresentations and the representations were made to induce Alliance Riggers to enter into the contract. We conclude that the evidence is both legally and factually sufficient to support the jury's affirmative finding on this issue.
Alliance Riggers also tried this case on a theory that Appellants represented that the services would have characteristics that they did not have and the services would be of a particular quality, but they were of another quality. Appellants represented to Alliance Riggers that the corporate marketing video would be professionally produced, but the finished product contained errors, it did not show Alliance Riggers safely operating the cranes, and it was not professionally produced. By emphasizing their experience and expertise in creating corporate webpages, Appellants caused Alliance Riggers to believe that the webpage would function properly and provide a means for potential customers to contact the company, but the webpage contained errors, it sometimes would not open, and it re-directed potential customers to crane services other than Alliance Riggers. This evidence is legally and factually sufficient to support the jury's finding that Appellants engaged in a false, misleading, or deceptive act or practice that Alliance Riggers relied on to its detriment.
Producing Cause
Appellants also challenge the evidence supporting the jury's determination that the false, misleading, or deceptive act or practice was the producing cause of Alliance Riggers' injury. Appellants rely on evidence which they claim shows that Alliance Riggers benefitted from the corporate marketing video. "Producing cause" means "a substantial factor which brings about the injury and without which the injury would not have occurred." Doe , 907 S.W.2d at 481. This requires evidence that the consumer was adversely affected by the defendant's deceptive conduct. See Doe , 907 S.W.2d at 481. Cordova testified that Alliance Riggers would not have entered into the contract if it had known that Appellants had misrepresented their level of expertise and experience.
When asked what he would have done differently if he had known that Ms. Restrepo did not have a Ph.D. and Appellants had only designed one web page, Cordova testified:
We wouldn't have entered into this contract, especially for this amount of money. That's a lot of money to give to amateurs to learn how to do a Web page.
The evidence also shows that the webpage created by Appellants does not function properly and contains errors. For example, the phone number on the webpage is not Alliance Rigger's phone number, and if potential customers called the number shown, they were re-directed to crane companies other than Alliance Riggers. Cordova testified that Alliance Riggers' crane service business went down dramatically in the year following the launch of the webpage.
Appellants assert that Alliance Riggers benefitted from the corporate marketing video because it won an award based on the video. The evidence showed that the *739 Restrepos produced a 20-minute video for Alliance Riggers which was submitted to the Steel Erectors Association of America (SEAA) in a competition for Project of the Year. Alliance Riggers won an award for erecting a bridge over Sun Bowl Drive in El Paso within the time limits provided for the project.[7] Cordova testified at length about the video and its relationship to the award:
[Cordova]: The video did not win anything. It was not an award-winning video. What the video was, is it showed the technical aspect for Alliance Riggers doing a project. It was judged on the technical expertise of Alliance employees and the use of Alliance equipment to perform a very specific project over at the university.
We lifted a pedestrian bridge over a highway that TxDOT only allowed us 72 hours to build this bridge that weighed 200,000 pounds over the Sun Bowl Drive, and we won an award for Alliance's expertise in performance of this work. It was not-the award was not given for a video; it was given for the work that was done.
What they're alleging is they won this award for us by having such a fantastic video. That's not the case at all. And if we get the opportunity to see that video, I will be able to point out a lot of things that were wrong with the video but it-it didn't have-that was not something that we were going to be sending out to contracts-to contractors.
[Alliance Riggers' counsel]: Did the video help, though? I mean, the video helped you win the award?
[Cordova]: Oh, yes. When you have a picture-a picture is a thousand words. And when it's presented properly, it influences them and it helps them understand what you were doing. And this highly technical lift that we were making, it was illustrated in this video.
Was it-was it done professionally? Well, we hired what we thought were professionals to do it and it got by the committee that voted for it and so-I mean, did it help us? I don't know. I believe it was the work that we did. All our employees' toil, their sweat and labor that won the award, not the high-definition picture.
Alliance Riggers hired Appellants to provide two services, create a webpage and produce a corporate marketing video. There is evidence from which the jury could find that Appellants misrepresented their level of expertise and experience, Alliance Riggers relied on these misrepresentations to its detriment, and Alliance Riggers would not have entered into the contract if it had known about the misrepresentations. Further, there is evidence from which the jury could find that Alliance Riggers' crane service business was adversely affected by the errors on the webpage. Cordova also testified that Alliance Riggers was unable to use the corporate marketing video because it was unprofessional and some of the scenes made it appear that the company was not operating the cranes in a safe manner. We conclude that the evidence is legally sufficient to support the jury's finding that Appellants' false, misleading, or deceptive acts or practices were a producing cause of Alliance Riggers' injury.
We have reviewed all of the evidence to determine whether it is factually sufficient to support the producing cause element. Appellants assert that the evidence *740 is insufficient to support the producing cause element because Alliance Riggers utilized the video to win the SEAA project of the year competition. Appellants created two videos for Alliance Riggers, the 20-minute video of the bridge being erected over Sun Bowl Drive in El Paso, and a shorter eight-minute corporate marketing video depicting various projects. The shorter video was the corporate marketing video required under the contract. While there is evidence that Alliance Riggers was able to utilize the 20-minute video to enter a competition and win an award for the company's project in erecting a 200,000-pound bridge, the jury also had before it evidence that the webpage created by Appellants does not function properly and errors made on the webpage had adversely impacted Alliance Riggers' business. Further, there is evidence that Alliance Riggers hired Appellants based on their misrepresentations about their level of experience and expertise in creating webpages. The jury's determination that Appellants' deceptive conduct was a substantial factor in bringing about the injury is not against the great weight and preponderance of the evidence. Accordingly, we find that the evidence is factually sufficient to support the producing cause element. Issue One is overruled.
SUFFICIENCY OF THE EVIDENCE-BREACH OF CONTRACT
In their second issue, Appellants attack the legal and factual sufficiency of the evidence supporting the jury's answers to the breach of contract questions. Like Issue One, this issue is multifarious because Appellants present eight sub-issues, three of which are unrelated to the sufficiency challenges. We will disregard sub-issues A, D, and H.
The four elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance, or tendered performance, by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff resulting from that breach. Velvet Snout, LLC v. Sharp , 441 S.W.3d 448, 451 (Tex.App.-El Paso 2014, no pet.). Appellants challenge all four elements.
Existence of a Valid Contract
The elements of a valid contract are (1) an offer; (2) an acceptance; (3) a meeting of the minds; (4) mutual consent to the terms; and, in the case of a written contract, (5) execution and delivery of the contract with the intent that it be mutual and binding. T.O. Stanley Boot Co., Inc. v. Bank of El Paso , 847 S.W.2d 218, 221 (Tex. 1992). Appellants argue that the evidence is legally and factually insufficient to show the existence of a valid contract between Carlos Restrepo and Alliance Riggers because Mr. Restrepo did not sign the contract and Ms. Restrepo signed it as an independent consultant. This argument is without merit because the Restrepos judicially admitted that each of them entered into the contract with Alliance Riggers.
A judicial admission is a formal waiver of proof that dispenses with the production of evidence on an issue. Lee v. Lee , 43 S.W.3d 636, 641 (Tex.App.-Fort Worth 2001, no pet.). A judicially admitted fact is established as a matter of law, and the admitting party may not dispute it or introduce evidence contrary to it. Id. A judicial admission must be a clear, deliberate, and unequivocal statement, and it occurs when an assertion of fact is conclusively established in live pleadings, making the introduction of other pleadings or evidence unnecessary.
*741 Horizon/CMS Healthcare Corp. v. Auld , 34 S.W.3d 887, 905 (Tex. 2000).
In their counterclaim for breach of contract, the Restrepos expressly alleged that each of them entered into a contract with Alliance Riggers, as follows:
With an effective date of March 11, 2011 Defendants/CounterClaimants Linda S. Restrepo, Carlos E. Restrepo (herein referred to Defendants/CounterClaimants) entered into a Contract with CounterDefendants whereby Linda S. Restrepo and Carlos E. Restrepo as private Consultants were to produce a 5-page webpage and 5-minute Corporate marketing video for Alliance Riggers & Constructors. At the time of the contract Plaintiff/CounterDefendants represented that they would supply the data and information required to perform the work which they failed to do so. Defendants/CounterClaimants timely began performance of the contract when directed by Plaintiff/ CounterDefendants.
This allegation is a clear, deliberate, and unequivocal statement that Carlos Restrepo and Linda Restrepo entered into a contract with Alliance Riggers to produce a corporate webpage and corporate marketing video. See Chilton Insurance Company v. Pate & Pate Enterprises, Inc. , 930 S.W.2d 877, 884 (Tex.App.-San Antonio 1996, writ denied). At Appellants' request, the trial court submitted issues to the jury on Appellants' claim that Alliance Riggers breached the contract. The jury found against Appellants on this claim, and Appellants are challenging that adverse finding in this appeal. We conclude that both Mr. and Ms. Restrepo judicially admitted that they entered into the contract with Alliance Riggers.
Performance by Alliance Riggers
Alliance Riggers had the burden to prove that it performed or tendered performance under the contract. The jury found that Alliance Riggers did not fail to comply its obligations, but Appellants argue that Alliance Riggers failed to pay them all sums due under the contract. The contract required Alliance Riggers to pay Appellants $4,500 for the webpage ($3,500 down payment and $1,000 upon completion) and $18,500 for the corporate marketing video ($9,000 down payment, $8,500 second payment, and $1,000 upon completion). Alliance Riggers paid Appellants the initial down payment of $3,500 for the webpage but it did not pay the final payment of $1,000 because the webpage contained errors and did not function as expected. Alliance Riggers paid Appellants the initial down payment of $9,000 for the corporate marketing video and a second payment of $8,500, but it did not pay the final $1,000 payment because it found the video to be unacceptable. Alliance Riggers paid Appellants an additional $18,271.49 for expenses and work related to video production. We conclude that the evidence is both legally and factually sufficient to prove that Alliance Riggers tendered performance under the contract.
Breach by Appellants
Appellants also challenge the sufficiency of the evidence supporting the jury's determination that that they failed to comply with the contract. The contract required Appellants "[t]o produce a Five minute High Definition Corporate Marketing Video for CLIENT to include professional English narration, graphics, music score, and signage." Cordova explained that one purpose of the video was to show general contractors that it operated in a safe manner. He found the video to be unacceptable because it contained factual misstatements and errors, it was not professionally done, and it used the wrong logo for the company. Cordova explained *742 that Appellants created the 20-minute video for the SEAA competition and they utilized that same video in the corporate marketing video but sped it up so that it would fit within the time allotted. While the video was being shown to the jury, Cordova pointed out that this speeding up of the crane operation made it appear that the cranes and objects they were lifting were swinging around wildly. Consequently, a person viewing the video could conclude that Alliance Riggers operated its cranes in an unsafe manner. The acceleration of the recording also made the video look unprofessional because it emphasized each time the video operator moved the camera, panned across a scene, or zoomed in and out.
The contract also required Appellants "[t]o produce an E-Commerce Internet Platform to include mounting the High Definition Corporate Marketing Video to the Internet Platform." Cordova testified that Alliance Riggers is a subcontractor and they had asked Appellants for a webpage which would provide general contractors with information about the capabilities of the company and its equipment, its bonding capacity, and the company's contact information. Cordova had not been able to view the entire webpage because it would not fully load on his computer, but he was aware that the webpage did not correctly depict Alliance Riggers' logo and it contained inaccurate information. For example, the phone number shown on the webpage for Alliance Riggers was incorrect. Alliance Riggers was unable to make any changes to the webpage because Appellants claimed ownership of the webpage and they would not make any changes unless Alliance Riggers paid them additional sums of money. For all of these reasons, Cordova found the webpage to be unacceptable. When the foregoing evidence is considered in the light most favorable to the jury's verdict, it is legally sufficient to support the jury's determination that Appellants breached the contract.
Appellants assert that they fully performed under the contract and Alliance Riggers accepted the work performed. There is evidence that Alliance Riggers approved the payment of certain invoices submitted by Appellants, but Cordova testified that Alliance Riggers did not approve the webpage or the corporate marketing video. While Alliance Riggers utilized the 20-minute video created by Appellants to enter the SEAA competition, that was a separate project from the corporate marketing video and Alliance Riggers paid Appellants an additional $7,000 for that video. Further, Cordova believed the SEAA video served only a limited role in Alliance Riggers winning the competition. We conclude that the evidence is factually sufficient to support the jury's finding that Appellants breached the contract.
Damages
Appellants next contend that the evidence is legally and factually insufficient to support the jury's award of damages in the amount of $34,000 for breach of contract. They argue that the measure of damages is the amount of money required for Alliance Riggers to finish its webpage. Appellants are incorrect. The universal rule for measuring damages for breach of a contract is just compensation for the loss or damage actually sustained. Dakil v. Lege , 408 S.W.3d 9, 12 (Tex. App.-El Paso 2012, no pet.) ; Abraxas Petroleum Corp. v. Hornburg , 20 S.W.3d 741, 760 (Tex.App.-El Paso 2000, no pet.). A non-breaching party is generally entitled to all actual damages necessary to put it in the same economic position in which it would have been had the contract not been breached. Dakil , 408 S.W.3d at 12.
*743 Alliance Riggers paid Appellants $21,000 of the $23,000 required under the contract, and it paid Appellants an additional $17,950 for work related to video production plus $321.49 for associated expenses. The jury's award of damages in the amount of $34,000 falls within the sum of money Alliance Riggers paid to Appellants for creation of the webpage and corporate marketing video. We conclude that the evidence is both legally and factually sufficient to support the jury's award of damages.
Appellants' Suit on Sworn Account
In this same issue, Appellants argue that the judgment is erroneous because the trial court failed to render judgment in their favor on the suit for sworn account in the amount of $17,000. They contend that they are entitled to judgment as a matter of law because Alliance Riggers failed to file a verified denial.
In their suit on sworn account, Appellants sought to recover a $1,000 "retainer" for creating the corporate marketing video, $2,500 for additional work performed in connection with the corporate marketing video, a $1,000 "retainer" for creating the Alliance Riggers webpage, and $12,500 for additional work performed on the corporate webpage. Rule 185 provides that if a party does not timely file a written denial under oath, the party is not permitted to deny the claim. TEX.R.CIV.P. 185. Appellants' pleadings and the affidavit of Carlos Restrepo demonstrate that the suit on sworn account claim is based upon the contract between the parties to create the corporate marketing video and webpage. Appellants argue that their sworn pleadings established a prima facie case under Rule 185 and Alliance Riggers was precluded from disputing Appellants' claim that they had earned an additional $17,000 for the webpage and corporate marketing video. The record shows, however, that Appellants did not voice any objection at trial based on Rule 185 when Alliance Riggers introduced testimony and evidence which effectively denied Appellants' sworn account claim. Appellants' failure to object to the evidence waived any defect in Alliance Riggers' pleadings. See Robinson v. Faulkner , 422 S.W.2d 209, 213 (Tex.Civ.App.-Dallas 1967, writ ref'd n.r.e.). The trial court did not err by entering judgment in favor of Alliance Riggers and against Appellants on the breach of contract claim. Issue Two is overruled.
COMMON LAW SERVICE MARK INFRINGEMENT AND DILUTION
In their third issue, Appellants challenge the legal and factual sufficiency of the evidence supporting the jury's determination that Appellants infringed the common law service mark of Alliance Riggers, and Appellants commercially used a mark or trade name that is likely to cause the dilution of Alliance Riggers' service mark. Appellants raise several sub-issues pertaining to these causes of action.
Common Law Service Mark Infringement
Alliance Riggers sought to enjoin Appellants from using its service mark, Alliance Riggers & Constructors, and its logo. Although Alliance Riggers' pleadings refer to the cause of action as "trademark infringement," its suit did not state a claim for trademark infringement under the Lanham Act. See 15 U.S.C.A. §§ 1111 - 1127 (West 2009 & Supp. 2017). Alliance Riggers instead stated a claim for common law trademark or service mark infringement under state law. To succeed on a common law claim for service mark infringement, the party seeking an injunction must show: (1) the name it seeks to *744 protect is eligible for protection; (2) it is the senior user of the name; (3) there is a likelihood of confusion between its mark and that of its competitor; and (4) the likelihood of confusion will cause irreparable injury for which there is no adequate legal remedy. All American Builders, Inc. v. All American Siding of Dallas, Inc. , 991 S.W.2d 484, 488 (Tex.App.-Fort Worth 1999, no pet.). The elements in common law trademark or service mark infringement under Texas law are the same as those under federal trademark law. Hot-Hed, Inc. v. Safehouse Habitats (Scotland), Ltd. , 333 S.W.3d 719, 730 (Tex.App.-Houston [1st Dist.] 2010, pet. denied) ; All American Builders, Inc. , 991 S.W.2d at 488.
Alliance Riggers alleged in its suit that Appellants registered a domain name, allianceriggersandconstructors.com, that is identical or confusingly similar to its tradename, Alliance Riggers & Constructors. Question 13 in the jury charge pertains to the common law service mark infringement cause of action:
Did the Restrepos infringe the common law service mark of Alliance Riggers and Constructors?
'Service mark' means a word, name, symbol, or device, or any combination of those terms, used by a person to (i) identify and distinguish the services of one person, including a unique service, from the services of another and (ii) indicate the source of the services, regardless of whether the source is unknown.[8]
To establish a claim for infringement of a common law service mark, Alliance Riggers and Constructors must establish by a preponderance of the evidence:
(1) the name it seeks to protect is eligible for protection;
(2) it is the senior user of the name; and
(3) there is a likelihood of confusion between its mark and that of the other user.
In determining the existence of a likelihood of confusion, you may consider a number of factors including:
(1) the type or strength of the mark;
(2) the degree of similarity between the mark of Alliance Riggers and Constructors and the mark used by the Restrepos;
(3) the similarity between the services offered by Alliance Riggers and Constructors and the services offered by the Restrepos;
(4) the identity of the customers of Alliance Riggers and Constructors and the customers of the Restrepos;
(5) the similarity of the customers of Alliance Riggers and Constructors and the customers of the Restrepos;
(6) the Restrepos intent; and
(7) the existence of actual confusion.
By its affirmative answer to Question No. 13, the jury found that Appellants infringed the common law service mark of Alliance Riggers.
On appeal, Appellants raise the following complaints about the jury charge: (1) Question 13 assumed that Alliance Riggers had a registered trademark; (2) Question 13 should not have been submitted to the jury because there is no evidence supporting it; (3) Question 13 is inconsistent with the petition because it refers to common law service mark, but Alliance Riggers' pleadings refer to trademark;
*745 (4) Question 13 should not have been submitted to the jury because the trial court permitted Alliance Riggers to contradict its judicial admission that its trademark is not registered; and (5) the jury charge violates the Supremacy Clause. At the charge conference, Appellants raised only one objection to Question 13, namely, that there was no evidence that Alliance Riggers is the senior user of the service mark, and they did not raise any of the objections they have presented on appeal. Consequently, these arguments are waived. See TEX.R.CIV.P. 274 ("A party objecting to a charge must point out distinctly the objectionable matter and the grounds of the objection. Any complaint as to a question, definition, or instruction, on account of any defect, omission, or fault in pleading, is waived unless specifically included in the objections.").
Appellants vigorously argue in their brief that Alliance Riggers may not maintain an action for common law service mark infringement because its trademark or trade name is not registered in Texas or with the United States Patent and Trademark Office. This argument is based on a misunderstanding of the cause of action brought by Alliance Riggers. A party may file suit for infringement of a registered trademark under the Lanham Act and Chapter 16 of the Texas Business and Commerce Code. See 15 U.S.C.A. §§ 1114, 1116 (West 2009 & Supp. 2017) ; TEX.BUS.&COM.CODE ANN. § 16.26 (West 2011). Alliance Riggers did not, however, base its claim on either of these statutes. Its cause of action is for infringement of a common law service mark. Appellants do not direct us to any authority holding that registration of a trademark or trade name is an element of a cause of action for common law service mark or trade name infringement. Registration is one factor which can be considered by the trier of fact in determining whether the service mark is famous, but we have found no authority holding that registration is a required element of the cause of action.
Appellants do not specifically challenge any of the elements of a common law service mark infringement claim. They instead argue that their utilization of the tradename, "alliance riggers and constructors," was authorized by the contract, occurred with express permission from Alliance Riggers, and was done only to create the webpage in compliance with the contract. Appellants are correct that the contract required them to produce a webpage for Alliance Riggers. The evidence showed, however, that Appellants purchased the domain name in their own name and they asserted ownership in the domain name and webpage to the exclusion of Alliance Riggers. Appellants placed a phone number on the webpage which did not direct customers to Alliance Riggers. Potential customers were instead re-directed by Appellants to crane service companies other than Alliance Riggers. Appellants ignored Alliance Riggers' demand to stop using the domain name and its common law service mark on the webpage, and the webpage remained operational for more than a year. It was the jury's task to resolve the conflicts in the evidence and to weigh the defensive evidence against the evidence submitted by Alliance Riggers in support of its claim. We conclude that the evidence is legally and factually sufficient to support the jury's verdict.
Common Law Service Mark Dilution
By answering Questions 14 and 15 affirmatively, the jury also found that Alliance Riggers service mark is famous and Appellants commercially used a mark or trade name that is likely to cause the dilution of the service mark of Alliance Riggers. A mark is diluted if there is a *746 likelihood of dilution due to blurring or tarnishment. Scott Fetzer Co. v. House of Vacuums, Inc. , 381 F.3d 477, 489 (5th Cir. 2004). Question 14 instructed the jury that:
A service mark is considered famous, if the service mark is widely recognized by the public throughout the state or in a geographic area in this state, as a designation of source of services of the service mark's owner. In determining whether a service mark is famous, you may consider the following factors:
(1) the duration, extent, and geographic reach of the advertisement and publicity of the service mark in this state, regardless of whether the service mark is advertised or publicized by the owner or a third party;
(2) the amount, volume and geographic extent of sales of services offered under the service mark in this state;
(3) the extent of actual recognition of the service mark in this state; and
(4) whether the mark is registered in this state or in the United States Patent and Trademark Office.
Question 15 defined "blurring" and "tarnishment" as follows:
'Dilution' means dilution by blurring or dilution by tarnishment, without regard to the presence of [sic] absence of:
(1) competition between the owner of a famous mark and another person;
(2) actual or likely confusion, mistake, or deception; or
(3) actual economic harm.
'Dilution by blurring' means an association arising from the similarity between a mark or trade name and a famous mark that impairs the famous mark's distinctiveness.
'Dilution by tarnishment' means an association arising from the similarity between a mark or trade name and a famous mark that harms the famous mark's reputation.
Appellants objected to Question 14 on the ground that there is no evidence that the service mark is famous. Any other arguments raised in Appellants' brief about the submission of these issues are waived. See TEX.R.CIV.P. 274. We will restrict our review to considering the legal and factual sufficiency of the evidence supporting the jury's answer to these questions.
Alliance Riggers began using the name "Alliance Riggers and Constructors" with its logo in 1978. The company uses its name and logo in its marketing. For example, the name and logo appear on its trucks and equipment, and in print advertising such as the Yellow Pages and the SEAA magazine. Alliance Riggers' name and logo are known not only in the United States but around the world. This evidence is both legally and factually sufficient to support the jury's finding that Alliance Riggers' service mark is famous. There is also evidence that Appellants, by creating and operating a website using the name "Alliance Riggers and Constructors" which contained information, both accurate and erroneous about Alliance Riggers, and which also directed potential customers to Alliance Riggers' competitors, diluted the service mark by both blurring and tarnishment. We conclude that the evidence is both legally and factually sufficient to support the jury's affirmative answers to Questions 14 and 15. Issue Three is overruled.
VEXATIOUS LITIGANT DETERMINATION
In Issue Four, Appellants contend that the trial court erred by determining that they are vexatious litigants because: (1) the court conducted an ex parte hearing; (2) the trial court did not have jurisdiction because the case had been removed to *747 federal court; (3) the vexatious litigant statute does not apply to Appellants because they were defendants in the case; (4) the trial court interfered with the federal case by having his bailiff contact a federal clerk for information; and (5) the evidence is insufficient to support the vexatious litigant order. Before considering these issues, we must address the state of the record.
Alliance Riggers correctly asserts in its brief that Appellants did not request and the court reporter did not file the reporter's record of the November 3, 2014 hearing. Appellants attached to their motion for new trial filed on December 4, 2014 what appears to be a copy of the reporter's record of the hearing. The copy of the reporter's record includes the court reporter's certification page for the transcription of the hearing. The motion to vacate also includes the court reporter's certification of the exhibits admitting during the vexatious litigant hearing. Following this certification, there are more than 150 pages of exhibits which correspond to the exhibits admitted during the hearing. In a direct appeal, the Rules of Appellate Procedure require the reporter's record, including the exhibit volumes, to be filed directly with the appellate court in accordance with applicable rules and standards. The primary purpose of this requirement is to insure that the reporter's record and exhibits are authentic. Because the transcription of the hearing and the exhibits appear to be authentic, we will utilize the record of the hearing and attached exhibits to review the arguments raised in Issue Four.
On January 16, 2013, Appellants filed a motion to declare Alliance Riggers a vexatious litigant. They did not obtain a hearing on their motion, and they continued to litigate the case. Appellants subsequently filed their answer and a counterclaim against Alliance Riggers alleging a suit on sworn account. Appellant's also brought a claim against several third-party defendants, El Paso Crane & Rigging, Inc., Cordova Alliance, LLC, Phillip Cordova, Phillip Pruett, Melody Pruett, Nick Delgado, Terry Stevens, Paul D. Cordova, and Frank H. Cordova. On July 7, 2014, Alliance Riggers filed a motion for the court to order that Appellants are vexatious litigants. The trial court initially set the motion for hearing on October 29, 2014. Appellants objected to the setting and asked the trial court to conduct a hearing on their motion to declare Alliance Riggers a vexatious litigant. The trial court determined that it would hear Alliance Riggers' motion first. Appellants responded by filing notice of appeal to the Eighth Court of Appeals on October 24, 2014,[9] and by filing notice of removal to federal court on October 28, 2014. The federal district court entered an order on October 29, 2014 striking the notice of removal and remanding the cause to the County Court at Law No. 5 "to the extent it was ever removed." The trial court re-set the motion to be heard on November 3, 2014, and sent notice to the parties. Appellants submitted another notice of removal to the federal court for filing on October 31, 2014, but the notice was received and not immediately filed. The federal district court did not file the notice of removal until December *748 4, 2014, and it entered an order remanding the matter to the County Court at Law No. 5 on that same date.[10] The court conducted the hearing on Alliance Riggers' motion on November 3, 2014, and Alliance Riggers presented evidence in support of its motion. Appellants did not attend the hearing. Manuel Anchondo, a clerk in the federal court, testified that the Restrepos' notice of removal was received on October 31, 2014, but it had not been filed because Appellants had also filed an application to proceed in forma pauperis , and the document would not be filed until after the federal court had ruled on the application. At the conclusion of the hearing, the trial court granted the motion to declare Appellants vexatious litigants, and ordered each of them to post a bond in the amount of $25,000.
Ex Parte Hearing
Appellants first complain that the trial court erred by conducting an ex parte hearing. Section 11.053 of the Civil Practice and Remedies Code requires the trial court to give notice to all parties before conducting a hearing on a vexatious litigant motion. TEX.CIV.PRAC.&REM.CODE ANN. § 11.053 (West 2017). Appellants' assertion that the hearing was conducted without their knowledge is contrary to the record. The trial court's order recites that Appellants were "duly notified" of the hearing but they did not appear. Further, the trial court stated on the record at the hearing that Appellants had been given notice of the hearing date by email and by regular mail. The trial court did not err by conducting the hearing without the presence of Appellants.
Removal to Federal Court
Appellants next argue that the trial court did not have jurisdiction to conduct the vexatious litigant hearing because the case had been removed to federal court on October 31, 2014. A defendant may remove a civil action from a state court to federal court by filing a notice of removal in the appropriate federal district court and following the procedures set forth in 28 U.S.C.A. § 1446 (West Supp. 2016). Subsection (d) provides as follows:
(d) Notice to adverse parties and State court.-Promptly after the filing of such notice of removal of a civil action the defendant or defendants shall give written notice thereof to all adverse parties and shall file a copy of the notice with the clerk of such State court, which shall effect the removal and the State court shall proceed no further unless and until the case is remanded. [Emphasis added].
28 U.S.C.A. § 1446(d).
The evidence shows that the notice of removal submitted to the federal court for filing on October 31, 2014 was received, but not filed, until December 4, 2014. Under the plain language of the statute, the mere receipt of the notice of removal did not deprive the County Court at Law of jurisdiction to rule on Alliance Riggers' vexatious litigant motion. See 28 U.S.C.A. § 1446(d).
Applicability of Statute
Appellants also argue that the vexatious litigant statute does not apply to them because they were defendants in the case. Under Section 11.051 of the Civil Practice and Remedies Code, a defendant may file a motion for an order determining that the plaintiff is a vexatious litigant and *749 requiring the plaintiff to furnish security. TEX.CIV.PRAC.&REM.CODE ANN. § 11.051 (West 2017). The term "plaintiff" is defined to mean an individual who commences or maintains a litigation pro se. TEX.CIV.PRAC.&REM.CODE ANN. . § 11.001(5) (West 2017). The term "litigation" means a civil action commenced, maintained, or pending in any state or federal court. TEX.CIV.PRAC.&REM.CODE ANN. § 11.001(2). Appellants filed a counterclaim against Alliance Riggers and a third-party claim against Cordova Alliance, El Paso Crane and Rigging, and the individual defendants. Alliance Riggers filed its motion pursuant to Section 11.051 in response to Appellants filing a counterclaim against it. Thus, the vexatious litigant motion was filed against Appellants in their capacity as counter-plaintiffs in the case.
Interference with Federal Case
In their next sub-issue, Appellants assert that the trial court interfered with the federal case by having the bailiff contact a federal court clerk for information about the notice of removal. They complain that the trial court did not issue a subpoena for the federal court clerk or give them notice that the bailiff was going to contact the federal court clerk. Appellants also assert that the trial court violated their right to cross-examine the federal court clerk. The record reflects that the trial court obtained information about the notice of removal in order to determine whether it had jurisdiction to hear the vexatious litigant motion. Appellants cite no authority in support of their claim that the trial court was required to give them notice before asking the bailiff to obtain additional information about the notice of removal purportedly filed in federal court. Likewise, Appellants have not presented any authority establishing that the trial court was required to issue a subpoena for the federal court clerk who testified at the hearing. Further, there is no requirement that a subpoena be issued if a witness is willing to appear and testify voluntarily. See In re State of Texas , 390 S.W.3d 439, 443 (Tex.App.-El Paso 2012, orig. proceeding) (trial court abused its discretion by ordering State to issue subpoenas for all witnesses, including those witnesses who were willing to appear voluntarily). Even if the trial court erred, Appellants failed to preserve each of these complaints because they voluntarily chose not to attend the hearing and did not raise a timely objection to the testimony of the bailiff or the federal court clerk. See TEX.R.APP.P. 33.1.
Sufficiency of the Evidence
In their final sub-issue, Appellants challenge the vexatious litigant order by asserting that the evidence is insufficient to support the required statutory findings. Chapter 11 of the Civil Practice and Remedies Code provides a mechanism for the restriction of frivolous and vexatious litigation. TEX.CIV.PRAC.&REM.CODE ANN. § 11.051 et seq. (West 2017). This law has been described as striking a balance between "Texans' rights of access to their courts and the public interest in protecting defendants from those who abuse our civil justice system." Leonard v. Abbott , 171 S.W.3d 451, 455 (Tex.App.-Austin 2005, pet. denied). Under Section 11.054, the court may find that a plaintiff is a vexatious litigant if the defendant shows that there is not a reasonable probability that the plaintiff will prevail in the litigation, and plaintiff, acting pro se , has prosecuted, maintained, or commenced at least five other litigations within the seven-year period preceding the motion that have been determined adversely to him, or have been determined by a trial or appellate court to be frivolous or groundless under state or federal laws or rules of procedure.
*750 TEX.CIV. PRAC.&REM.CODE ANN. § 11.054 (West 2017). A court may consider any evidence material to the ground of the motion, including: (1) written or oral evidence; and (2) evidence presented by witnesses or by affidavit. TEX.CIV.PRAC.&REM.CODE ANN. § 11.053.
An appellate court reviews a vexatious litigant determination under an abuse of discretion standard. Harris v. Rose , 204 S.W.3d 903, 905 (Tex.App.-Dallas 2006, no pet.) ; Nell Nations Forist v. Vanguard Underwriters Ins. , Co., 141 S.W.3d 668, 670 (Tex.App.-San Antonio 2004, no pet.). A trial court abuses its discretion when it renders an arbitrary and unreasonable decision lacking support in the facts or circumstances of the case, or when it acts in an arbitrary or unreasonable manner without reference to guiding rules or principles. Samlowski v. Wooten , 332 S.W.3d 404, 410 (Tex. 2011). In conducting this review, we are not free to substitute our own judgment for the trial court's judgment. Bowie Memorial Hospital v. Wright , 79 S.W.3d 48, 52 (Tex. 2002). A trial court may exercise its discretion to declare a party a vexatious litigant only if it first makes the prescribed statutory findings. Leonard , 171 S.W.3d at 459. Therefore, we may also review these findings for legal and factual sufficiency using the appropriate standards. Leonard , 171 S.W.3d at 459.
The first finding that the trial court must make is that there is no reasonable probability that Appellants will prevail on their counterclaim. Appellants' counterclaim against Alliance Riggers and the third-party claim against Cordova Alliance, El Paso Crane and Rigging, and seven individual defendants is based on an alter ego theory. The counterclaim/third-party claim arises from Appellants' assertion that Alliance Riggers breached the contract by refusing to pay the amounts Appellants claim are due under the contract and for other work performed.
A corporation is a separate legal entity from its shareholders, officers, and directors. TransPecos Banks v. Strobach , 487 S.W.3d 722, 728 (Tex.App.-EI Paso 2016, no pet.) ; Penhollow Custom Homes, LLC v. Kim , 320 S.W.3d 366, 372 (Tex.App.-El Paso 2010, no pet.). In order to prevail on their counterclaim, Appellants are required to show that the counter-defendants caused Alliance Riggers to be used for the purpose of perpetrating and did perpetrate an actual fraud primarily for the direct personal benefit of the holder, beneficial owner, subscriber, or affiliate. TEX.BUS.ORGS.CODE ANN. § 21.223(b) (West 2012); see TransPecos Banks, 487 S.W.3d at 728. The elements of fraud are (1) a material false representation, (2) that was made with knowledge or recklessness as to its falsity, (3) with the intent to induce reliance, and (4) that the other party "actually and justifiably relied upon," causing him injury. Ernst & Young, L.L.P. v. Pacific Mutual Life Insurance Company , 51 S.W.3d 573, 577 (Tex. 2001) ; Garcia v. Vera , 342 S.W.3d 721, 725 (Tex.App.-El Paso 2011, no pet.).
Appellants' counterclaim against Alliance Riggers and the third-party claim against Cordova Alliance, El Paso Crane and Rigging, and the individual defendants are based on an allegation that Alliance Riggers failed to pay Appellants for work performed in connection with creating Alliance Riggers' webpage and a corporate marketing video. Appellants' pleadings broadly assert that the corporate defendants are a "sham," but they do not allege any facts in their pleadings which would support a finding of actual fraud against Alliance Riggers or any of the third-party defendants. At the hearing, counsel for Alliance Riggers and the third-party defendants pointed out that Appellants had *751 never filed a response to the motion for no evidence summary judgment filed on June 12, 2013. Further, the jury found against Appellants on their claim that Alliance Riggers breached the contract by failing to pay them for work performed in connection with the contract. We conclude that the evidence is legally and factually sufficient to support the trial court's determination that there is no reasonable probability that Appellants would prevail on their counterclaim.
Appellants also challenge the sufficiency of the evidence supporting the trial court's finding that they had prosecuted, maintained, or commenced at least five other litigations within the seven year period preceding the motion, and those litigations had been determined adversely against them. Appellants vigorously assert that they had not prosecuted any other cases in the previous fourteen years, but they fail to consider that appeals and original proceedings filed by a litigant are included in the number of proceedings to be counted against a litigant. See TEX.CIV.PRAC.&REM.CODE ANN. § 11.001(2) (West 2017)(defining "litigation" as meaning a civil action commenced, maintained, or pending in any state or federal court); Retzlaff v. GoAmerica Comm. Corp. , 356 S.W.3d 689, 699 (Tex.App.-EI Paso 2011, no pet.).
Alliance Riggers filed its vexatious litigant motion on July 7, 2014. Alliance Riggers presented evidence that Appellants filed three interlocutory appeals involving this same case in 2013 and 2014. We dismissed two of the cases for lack of jurisdiction. See Linda S. Restrepo and Carlos E. Restrepo d/b/a Collectively RDI Global Services and R & D International v. Alliance Riggers & Constructors, Ltd. , No. 08-13-00007-CV, 2013 WL 1033285 (Tex.App.-El Paso March 13, 2013, no pet.) (mem. opin.)(attempted appeal from order denying Appellants' motion to dismiss for lack of prosecution); Linda S. Restrepo and Carlos E. Restrepo d/b/a Collectively RDI Global Services and R & D International v. Alliance Riggers & Constructors, Ltd. , No. 08-13-00153-CV, 2013 WL 3943066 (Tex.App.-El Paso July 24, 2013, no pet.) (mem. opin.) (attempted appeal from order granting Alliance Riggers' motion to compel requests for production and answers to interrogatories). In the third appeal, we affirmed the trial court's order denying Appellants' special appearance by opinion and judgment issued on February 28, 2014. See Linda S. Restrepo and Carlos E. Restrepo d/b/a Collectively RDI Global Services and R & D International v. Alliance Riggers & Constructors, Ltd. , 441 S.W.3d 453, 455 (Tex.App.-El Paso 2014, no pet.).
The evidence also showed that Appellants filed three original proceedings related to the underlying civil case in 2014. We summarily denied relief in each case. See In re Linda S. Restrepo and Carlos E. Restrepo , No. 08-14-00075-CV, 2014 WL 1260608 (Tex.App.-El Paso March 26, 2014, orig. proceeding) (mem. opin.)(challenging an order compelling discovery); See In re Carlos Restrepo and Linda Restrepo, No. 08-14-00159-CV, 2014 WL 2186446 (Tex.App.-El Paso May 23, 2014, orig. proceeding) (mem. opin.)(challenging multiple interlocutory orders); See In re Linda S. Restrepo and Carlos E. Restrepo, No. 08-14-00270-CV, 2014 WL 5035473 (Tex.App.-El Paso October 8, 2014, orig. proceeding) (mem. opin.)(requesting issuance of writ of prohibition against the trial court). At the same time Appellants were pursuing these interlocutory appeals and original proceedings, they made four attempts to remove the underlying civil case to federal court, and the federal court remanded the case back to state court each time. This evidence is legally and factually *752 sufficient to permit the trial court to find that Appellants had prosecuted, maintained, or commenced at least five other litigations within the seven year period preceding the filing of the vexatious litigant motion, and those litigations had been determined adversely against them. Issue Four is overruled.
SIXTH AMENDMENT VIOLATION
In Issue Five, Appellants contend that the trial court violated their right to counsel under the Sixth Amendment by forcing Mr. Restrepo to accept counsel against his will and by requiring Ms. Restrepo's attorney to represent another party, namely, Mr. Restrepo. Appellants assert that the trial court appointed Scott Reiner to represent Mr. Restrepo during his testimony.[11] This issue is without merit because the Sixth Amendment applies only to criminal prosecutions. See U.S. CONST. AMEND. VI ; Leachman v. Stephens , No. 02-13-00357-CV, 2016 WL 6648747 (Tex.App.-Fort Worth November 10, 2016, pet. denied). Issue Five is overruled.
ATTORNEY'S FEES
In their sixth issue, Appellants challenge the award of attorney's fees to Alliance Riggers. Appellants challenge the legal and factual sufficiency of the evidence supporting the award.
Entitlement to Attorney's Fees
Appellants argue that Alliance Riggers is not entitled to attorney's fees in the amount awarded by the jury because Alliance Riggers pursued a frivolous claim against them. They additionally argue that an award of attorney's fees is not permissible because the contract did not provide for it.
Section 38.001 of the Civil Practice and Remedies Code provides that a party in a breach of contract action may recover reasonable attorneys' fees. TEX.CIV.PRAC.&REM.CODE ANN. § 38.001(8) (West 2015). To recover fees under Section 38.001, a party must (1) prevail on a cause of action for which fees are recoverable, and (2) recover damages. Mustang Pipeline Co., Inc. v. Driver Pipeline Co., Inc. , 134 S.W.3d 195, 201 (Tex. 2004). Contrary to Appellants' assertion that the suit against them was frivolous, Alliance Riggers prevailed on its breach of contract action and it recovered damages. Consequently, Alliance Riggers was entitled to its attorney's fees under Section 38.001(8). Alliance Riggers is also entitled to recover attorney's fees under the DTPA. See TEX.BUS.&COM.CODE ANN. § 17.50(d) (West 2011) ("Each consumer who prevails shall be awarded court costs and reasonable and necessary attorneys' fees.").
Sufficiency of the Evidence
The jury awarded Alliance Riggers attorney's fees in the amount of $60,250 for trial, and conditional awards in the event of an appeal ($5,000 for an appeal to the Eighth Court of Appeals, and $2,500 for an appeal in the Texas Supreme Court). Alliance Riggers' attorney, Wayne Pritchard, testified that he is familiar with the hour rates charged by attorneys in El Paso, and his rate of $250 per hour is reasonable for a case of this nature. Mr. Pritchard expended a total of 241 hours on the case, including trial, for a total of $60,250.00 in attorney's fees. Mr. Pritchard also testified that a fee of $5,000 would be reasonable and customary for him to file a response to an appeal, $2,500 to file a *753 response to a petition for review in the Texas Supreme Court, and an additional $5,000 to file a brief in the Supreme Court if review was granted. Mr. Pritchard explained to the jury that the amount of attorney's fees he had testified to were higher than what he would ordinarily expect in a case of this nature, but it became necessary because he had been required to respond to 112 motions filed by Appellants, numerous appeals, and five separate removals of the case to federal court. The evidence is legally and factually sufficient to support the attorney's fees awards. Issue Six is overruled.
TRIAL ERRORS
In Issue Seven, Appellants contend that the trial court "allowed fundamental errors in procedure and the application of the law to the detriment of the constitutional rights of Due process of Appellants resulting in an unjust verdict based on prejudice and passion and unsupported by the evidence." Appellants' identify the following errors: (1) the verdict was premised on the actions of a constitutionally disqualified judge and is the result of passion or prejudice; (2) jury misconduct; (3) exclusion of evidence that the United States Patent and Trademark Office denied Alliance Riggers' trademark application; (4) the trial court gave Appellants only ninety minutes to present their case; and (5) the jury charge was erroneous.
As was the case with Issues One and Two, this issue is multifarious because Appellants have raised numerous grounds of error in a single issue. See In re S.K.A. , 236 S.W.3d at 894. We are not required to address multifarious assignments of error, but we may exercise our discretion to do so. Rich , 274 S.W.3d at 885.
Disqualification of Trial Judge
In their first sub-issue, Appellants contend that the Honorable Carlos Villa, Judge of the County Court at Law No. 5, is constitutionally disqualified from this case. Appellants have not presented any authority in support of their argument. The Rules of Appellate Procedure require a brief to contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record. TEX.R.APP.P. 38.1(i). When a brief presents bare assertions of error, without argument or authority, the complaint is waived. See Fredonia State Bank v. Gen. Am. Life Ins. Co. , 881 S.W.2d 279, 284-85 (Tex. 1994) ; McKellar v. Cervantes , 367 S.W.3d 478, 484 n.5 (Tex.App.-Texarkana 2012, no pet.). This issue will be disregarded.
Jury Misconduct
Appellants also allege that jury misconduct occurred because four jurors did not truthfully answer questions during voir dire. Our review of the record reflects that only two of the persons about which Appellants complain actually served on the jury. Therefore, we will restrict our review of this issue to the arguments made with regard to Juror 182609 and Juror 773571.
Rule 327(a) provides:
When the ground of a motion for new trial, supported by affidavit, is ... that a juror gave an erroneous or incorrect answer on voir dire examination, the court shall hear evidence thereof from the jury or others in open court, and may grant a new trial if ... the erroneous or incorrect answer on voir dire examination, be material, and if it reasonably appears from the evidence both on the hearing of the motion and the trial of the case and from the record as a whole that injury probably resulted to the complaining party.
TEX.R.CIV.P. 327(a).
Appellants complain that Juror 182609 failed to disclose that he works at KFOX television. Our review of the record reflects *754 that when Alliance Riggers' counsel asked the venire whether any of them had a job involving the creation of videos for other persons, Juror 182609 stated that he worked for KFOX television, and while he made videos in the past, he is now in production. Consequently, this juror did not give an erroneous or incorrect answer during voir dire.
Appellants also allege that Juror 182609 has a criminal conviction for DWI which he failed to disclose. Appellants attached to their motion for new trial a certified copy of a complaint and information charging a person with the same name as Juror 182609 with DWI, but there is no evidence that they are the same person, or that he was finally convicted of DWI. Thus, Appellants' motion for new trial did not present sufficient evidence to show that Juror 182609 gave an erroneous or incorrect answer during voir dire.
Appellants alleged that Juror 773571 did not disclose that he was a party to a lawsuit and that he had a warrant. Appellants attached to their motion for new trial an unauthenticated copy of a warrant search showing that a person with the same name as Juror 773571 had a warrant for a traffic offense. Appellants also attached an unauthenticated copy of a register of actions for a case in a JP court in 2007. According to the register of actions, the JP court granted judgment in the amount of $1,500 against a person with the same name as Juror 773571. There is no evidence that Juror 773571 and the person in the documents are the same person. Because Appellants' motion for new trial did not present sufficient evidence to show that Juror 773571 gave an erroneous or incorrect answer during voir dire, their argument is without merit.
Exclusion of Evidence
Appellants next argue that the trial court improperly excluded evidence that the United States Patent and Trademark Office denied Alliance Riggers' trademark application. Appellants have not supported this assignment of error with references to the record or any citation to authority, and they have not presented any argument. See TEX.R.APP.P. 38.1(i). Accordingly, we decline to address this sub-issue.
Time Limits
Appellants also contend that they were denied a fair trial because the trial court imposed time limits on the presentation of their case. The record reflects that the trial court imposed time limits on the direct examination of Mr. Restrepo, as well as Alliance Riggers' cross-examination of both Mr. and Ms. Restrepo. Rule 611 of the Texas Rules of Evidence authorizes the trial court to exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to make the procedures effective for determining the truth, avoid wasting time, and protect witnesses from harassment or undue embarrassment. TEX.R.EVID. 611 ; see Tricon Tool & Supply, Inc. v. Thumann , 226 S.W.3d 494, 508 (Tex.App.-Houston [1st Dist.] 2006, pet. denied). Appellants have failed to show that the trial court abused its discretion by limiting Mr. Restrepo's testimony on direct examination to nintey minutes.
In this same sub-issue, Appellants assert that the trial court did not permit them to present (1) the entire webpage, including all videos, pictures, slide shows, and technical manuals, (2) the entire 20-minute SEAA video; and (3) the entire 9-minute corporate marketing video. The reporter's record includes the 9-minute corporate marketing video. Appellants have not provided the Court with any citation to the record or authority in support of this issue. We conclude that the complaint is waived. See TEX.R.APP.P. 38.1(i).
*755 Jury Charge Error
In their final sub-issue, Appellants raise numerous issues pertaining to the jury charge. These complaints amount to nothing more than bare assertions of error unsupported by argument and authority. See McKellar , 367 S.W.3d at 484 n.5. Given that these arguments are multifarious and are not properly briefed, we will disregard them. Issue Seven is overruled.
CROSS-POINT
Alliance Riggers argues in its cross-point that it is entitled to recover attorney's fees of $5,000 as awarded by the jury. This is not a true cross-point because Alliance Riggers is not challenging any aspect of the trial court's judgment. We observe, however, that the trial court's judgment awarded Alliance Riggers attorney's fees in the amount of $5,000 in the event of an appeal, and we have overruled Appellants' sufficiency issues, including their challenge to the award of attorney's fees. Having overruled each issue presented on appeal, we affirm the judgment of the trial court.

Ms. Restrepo was represented by counsel at trial while Mr. Restrepo was pro se. On appeal, Appellants are pro se.

The contract required Alliance Riggers to pay Appellants $9,000 for the corporate marketing video upon signing the contract, an additional $8,500 on April 11, 2011, and a final payment of $1,000 upon the completion of the video.

The contract required Alliance Riggers to pay Appellants $3,500 for the webpage upon signing the contract and a final payment of $1,000 upon completion of the webpage.

The judgment includes pre-judgment interest in the amount of $5,525.00.

Sub-issues A and C pertain to the sufficiency challenges.

The motion alleges: "Without granting jurisdiction to this Court Movants make a special appearance in accordance with Texas Rules of Civil Procedure Rule 120a for the purpose of submitting this Motion to Dismiss with Prejudice Against the Plaintiff."

Alliance Riggers paid Appellants an additional $7,000 for the 20-minute video that was submitted to the SEAA.

This definition of "service mark" is identical to the definition found in Section 16.001(8) of the Business and Commerce Code. See Tex.Bus.&Com.Code Ann. § 16.001(8) (West Supp. 2016).

The appeal was styled Linda S. Restrepo and Carlos E. Restrepo D/B/A Collectively RDI Global Services and R&D International v. Alliance Riggers & Constructors, Ltd. (cause number 08-14-00288-CV). On the date the notice of appeal was filed, the Court gave notice of its intent to dismiss the appeal for lack of jurisdiction because the order was not appealable. The Court dismissed the appeal for lack of jurisdiction on November 7, 2014. See Restrepo v. Alliance Riggers & Constructors, Ltd. , No. 08-14-00288-CV, 2014 WL 5800211 (Tex.App.-El Paso November 7, 2014, no pet.) (memo. opin.).

Because Appellants had filed four notices of removal of the same state case, the federal court found them to be vexatious litigants and it assessed a $100 sanction again them. The federal court prohibited them from filing another notice of removal or application to proceed in forma pauperis without first obtaining leave of court.

The record does not reflect that the trial court appointed Mr. Reiner to represent Mr. Restrepo.